UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| TOZ Partners LLC,<br><br>        Plaintiff,<br>vs.<br><br>Symetra Life Insurance Company,<br><br>        Defendant       / | Civil Action No.: **1:24cv21312**<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

      Plaintiff, TOZ Partners LLC ("TOZ"), through its undersigned counsel, for its Complaint against defendant Symetra Life Insurance Company ("Symetra"), alleges upon personal knowledge of its own conduct and upon information and belief as to the conduct of and facts concerning others as follows:

      1.     This case involves a dispute over a $6.5 million life insurance policy currently owned by TOZ and issued by Symetra. Symetra demanded premium payments in excess of the minimum amounts due under the policy's provisions to keep the policy in force; failed to draft amounts from TOZ's bank account equal to the amount that Symetra had told TOZ was sufficient on a monthly basis to keep the policy in force; and violated Florida's statutory notice provisions as they pertain to the lapse of a life insurance policy.

      2.     TOZ seeks, *inter alia*, a judicial declaration that the policy remains in full force and effect, and has not lapsed, as claimed by Symetra.

**PARTIES**

      3.     Plaintiff TOZ is a limited liability company, duly formed under the laws of the State of New York. TOZ's sole member and manager is Bedis Zormati, who is domiciled in and

a citizen of the State of New York.

4.      Defendant Symetra is a life insurance company, duly formed under the laws of the State of Iowa, with its principal place of business at 777 108th Avenue NE, Suite 1200, Bellevue, Washington 98004. At all relevant times, Symetra has been licensed by the Florida Office of Insurance Regulation under Florida Company Code 05516 as a life and health insurer, authorized to sell, *inter alia*, individual life insurance policies on a direct basis in the State of Florida.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      The Court may exercise personal jurisdiction over Symetra under Fla. Stat. 48.193(1)(a)(4), as it personally or through an agent contracted to insure a person located within the State of Florida at the time of contracting, which contract of insurance is the subject matter of this lawsuit.

7.      Venue is proper under 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Among other things, the primary residence of the life insured, Ellen J. Joseph, and the situs of the Ellen Joseph Irrevocable Trust, the initial owner of the subject life insurance policy, was 3625 N. Country Club Drive, No. 708, Aventura Florida 33180 when the policy was issued and delivered, which is located in Miami-Dade County, Florida.

## FACTS

8.      On or about March 4, 2020, Symetra issued life insurance policy number US00017266 (the "Policy," a copy of which is attached hereto as Exhibit A) insuring the life of

Ellen J. Joseph, who was then and remains a resident of Florida.

9.      Ellen J. Joseph was seventy-five years old at the time that the Policy was issued.

10.     The face amount of the Policy at all relevant times was $6,500,000.00.

11.     The Policy was issued on Symetra's Florida policy form, and states that the "STATE OF ISSUE" was "FL." Ex. A at 2.1.

12.     The Policy states that its "Premium Payment Mode" is "ANNUAL," and the "Minimum Monthly Premium" is "N/A." *Id.* at 2.2.

13.     The owner of the Policy at the time the Policy was issued was the Ellen Joseph Irrevocable Trust ("Trust"), whose trustee was a resident of Florida.

14.     The Policy was issued for delivery, and delivered, to the Trust in Florida.

15.     On or about April 29, 2022, the Trust assigned the Policy to TOZ in a lawful life settlement transaction.

16.     On or about May 4, 2022, Symetra acknowledged the change of the Policy ownership from the Trust to TOZ without objection.

17.     The Policy was a Flexible Premium Adjustable Life Insurance Policy. It specifically states: "Premiums are flexible and you may vary the amount and timing of your premiums." *Id.* (first page, third bullet).

18.     An adjustable life insurance policy is a hybrid life insurance policy that combines characteristics of term and whole life insurance. It is a form of permanent insurance, which is designed to last the entire life of the insured as long as the minimum amount of premiums are paid.

19.     An adjustable life policy has a cash value component that grows with the insurer's financial performance but has a guaranteed minimum interest rate. A portion of the planned

premium is applied to satisfy the cost of insurance (such as administrative fees of the insurer and death benefit coverage), while the other portion is allocated to the policy's cash value. While an owner has the ability to pay more than the minimum amount of premium required to keep the policy in force and accrue interest on that additional premium payment under the terms of the policy, the product is marketed and sold based on the insurer's promise (consistent with the Policy language quoted above) that the owner can reduce premium payments to the minimum required if the owner so chooses. This provides the policyowner with flexibility with respect to premium payments, depending on the owner's financial circumstances.

20.     Here, while the planned annual premium for the Policy was $240,552.00, the owner of the Policy could choose to pay a lesser amount and keep the Policy in force.

21.     The Policy also included a No Lapse Guarantee, described in the Policy as follows:

> The No Lapse Guarantee provides that, as long as Your Adjusted Premium, on each Monthly Anniversary, is greater than or equal to the Accumulated Minimum Monthly Premium, Your Policy will not terminate before the No Lapse Guarantee Expiry Date shown in the Coverage Description, even if Your Net Cash Surrender Value is insufficient to cover the Monthly Deduction.
>
> On the first Monthly Anniversary when Adjusted Premium is less than the Accumulated Minimum Monthly Premium, We will send You a written notice stating the amount required to keep the No Lapse Guarantee in force. The amount will be:
>
> - the Accumulated Minimum Monthly Premium; minus
> - the Adjusted Premium; plus
> - the Minimum Monthly Premium for next month.

*Id.* at 11.

22.     TOZ called Symetra and asked what the minimum amount that TOZ would be required to pay to Symetra on a monthly basis to keep the Policy in force.

23.     Symetra informed TOZ that the minimum monthly amounts to keep the Policy in

force included (a) $10,300.00 for the cost of insurance component, and (b) $710.00 for the No Lapse Guarantee, totaling $11,010.00 per month.

24.     As set forth below, based on information provided by Symetra regarding the amount needed on a monthly basis to keep the Policy in force, TOZ authorized Symetra to draft $12,500.00 per month (more than the minimum amounts required for the cost of insurance and No Lapse Guarantee) from TOZ's bank account to keep the Policy in force, but Symetra (a) failed to draft amounts as authorized by TOZ, and (b) demanded premium payment amounts in excess of the minimum required to keep the Policy in force. Through its conduct in these regards in violation of the Policy's provisions, and other regards (such as statutory violations, as alleged below), Symetra has improperly claimed that the Policy lapsed for nonpayment of premium.

25.     On or about June 6, 2022, Symetra mailed TOZ a cash value insufficient notice ("CVIN") demanding $58,447.07 before August 7, 2022.

26.     The June 6, 2022 CVIN was erroneous.

27.     The June 6, 2022 CVIN sought an excessive amount.

28.     On or about June 13, 2022, TOZ faxed Symetra a billing change form, requesting that Symetra draft $13,000.00.

29.     Symetra inexplicably failed to draft the amount requested.

30.     On or about July 1, 2022, TOZ faxed Symetra another billing change form, requesting that Symetra draft $22,000.00.

31.     Symetra again inexplicably failed to draft the amount requested.

32.     On or about July 5, 2022, Symetra mailed TOZ a CVIN demanding $75,735.59 before September 5, 2022.

33.     The July 5, 2022 CVIN was erroneous.

34.     The July 5, 2022 CVIN sought an excessive amount.

35.     On or about July 6, 2022, TOZ directed Symetra to set up automatic annual payments of $22,000.00.

36.     On or about July 12, 2022, Symetra processed a payment of $22,000.00.

37.     On or about August 4, 2022, Symetra mailed TOZ a CVIN demanding $71,024.11 before October 5, 2022.

38.     The August 4, 2022 CVIN was erroneous.

39.     The August 4, 2022 CVIN sought an excessive amount.

40.     On or about August 15, 2022, TOZ directed Symetra to set up automatic monthly payments of $22,000.00, drafting that amount on the 1st of each subsequent month.

41.     On or about August 22, 2022, Symetra processed a payment of $22,000.00.

42.     On or about September 1, 2022, Symetra processed a payment of $22,000.00.

43.     On or about September 13, 2022, Symetra mailed TOZ a $66,000.00 bill, demanding payment before October 4, 2022.

44.     The September 13, 2022 bill was erroneous.

45.     The September 13, 2022 bill sought an excessive amount.

46.     On or about October 4, 2022, Symetra mailed TOZ a CVIN demanding $61,601.14 before December 5, 2022.

47.     The October 4, 2022 CVIN was erroneous.

48.     The October 4, 2022 CVIN sought an excessive amount.

49.     On or about October 4, 2022, TOZ directed Symetra to set up automatic monthly payments of $12,500.00.

50.     On or about October 10, 2022, Symetra processed a payment of $12,500.00.

51.     On or about November 1, 2022, Symetra processed a payment of $12,500.00.

52.     On or about December 10, 2022, Symetra processed a payment of $12,500.00.

53.     On or about December 5, 2022, Symetra mailed TOZ a CVIN demanding $58,678.18 before February 5, 2023.

54.     The December 5, 2022 CVIN was erroneous.

55.     The December 5, 2022 CVIN sought an excessive amount.

56.     On or about January 3, 2023, Symetra processed a payment of $12,500.00.

57.     On or about February 1, 2023, Symetra processed a payment of $12,500.00.

58.     On or about February 6, 2023, Symetra sent TOZ a lapse notice stating that the Policy lapsed without value.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
**(Breach of Contract)**

59.     TOZ repeats and realleges paragraphs 1 through 58 as if set forth fully and at length herein.

60.     The Policy is an enforceable contract.

61.     Symetra did not account for payments in accordance with the Policy's terms.

62.     The CVINs did not reflect the actual amounts due and owing in accordance with the terms of the Policy.

63.     TOZ has timely made all the necessary premium payments to Symetra.

64.     TOZ timely paid all the required premium payments to keep the Policy in force and from lapsing.

65.     In addition, TOZ directed Symetra twice – on June 13, 2022 and July 1, 2022 – to draft payments, which Symetra failed to do.

66.     Had Symetra drafted those payments, the Policy would have had sufficient cash

value to carry it past February 6, 2023.

67.    TOZ is prepared and has always been prepared to pay any proper and legitimate outstanding premiums due and owing under the Policy pursuant to its terms and conditions.

68.    TOZ has complied with all Policy provisions, and is not in breach thereof.

69.    TOZ has complied with all conditions precedent to bring this action, or any such conditions were waived by Symetra.

70.    No claim has been made under the Policy, as the insured is alive.

71.    Symetra has refused to withdraw its erroneous lapse notice and restore the Policy.

72.    Symetra has breached the provisions of the Policy by demanding premium payments in excess of the amounts due under the Policy, and contending that the Policy lapsed as of February 6, 2022, when TOZ had paid premiums in an amount sufficient to keep the Policy in full force and effect on and after February 6, 2022 pursuant to its terms and conditions.

73.    Symetra has breached the provisions of the Policy by failing to withdraw its erroneous lapse notice, and, alternatively, informing TOZ that it must submit an application to reinstate the Policy, which would involve new underwriting of the insured, a substantial increase in annual premium payments due for the Policy, and a new contestability period under the Policy (which is now beyond the original two-year contestability period).

74.    TOZ has been damaged as a result of Symetra's breaches of the Policy provisions in an amount that will be proven at trial, including the amount of attorneys' fees that it has and will incur in this action as a result of Symetra's breaches of the Policy provisions.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment)

75.    TOZ repeats and realleges paragraphs 1 through 58 as if set forth fully and at length herein.

76.     Under 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare rights, status, and other legal relations between the parties, whether or not further relief is or could be sought.

77.     Symetra has claimed in writing that the Policy lapsed on or about February 6, 2022 for non-payment of required premiums.

78.     TOZ claims that Symetra's lapse notice was erroneous, and that the amounts that it demanded in premium payments during the relevant time period were excessive and in violation of the provisions of the Policy.

79.     Thus, there is an actual case or controversy between TOZ and Symetra as to whether the Policy properly lapsed or should remain in full force and effect. Hence, TOZ seeks a judicial declaration in this action in this regard.

80.     TOZ is entitled to a declaratory judgment from this Court in the manner set forth above because only this action will resolve all issues and controversies between TOZ and Symetra with respect to whether the Policy remains valid and enforceable or has lapsed.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Statutory Violations)**

81.     TOZ repeats and realleges paragraphs 1 through 58 as if set forth fully and at length herein.

82.     Symetra's notices failed to comply with Florida statutory notice requirements.

83.     Under Fla. Stat. § 627.4555, Symetra was required to provide notice of impending lapse after the expiration of the grace period and at least twenty-one days before the lapse is effective.

84.     Symetra failed to provide notice of impending lapse after the expiration of the grace period and at least twenty-one days before the lapse was purportedly effective.

85.     Thus, Symetra's attempt to lapse the Policy was legally ineffective by statute.

86.     Moreover, under Fla. Stat. § 627.4555, Symetra was required to notify the applicant that it could designate a secondary addressee at the time of the application on a form provided by Symetra or at any subsequent time by submitting written notice.

87.     Symetra failed to notify the applicant that it could designate a secondary addressee at the time of the application on a form provided by Symetra or at any subsequent time by submitting written notice.

88.     Thus, Symetra's attempt to lapse the Policy was legally ineffective for this additional statutory reason.

89.     Additionally, under Fla. Stat. § 627.4555, Symetra was required to mail a notice of impending lapse at least twenty-one days prior to the expiration of the grace period.

90.     Symetra failed to mail a notice of impending lapse at least twenty-one days prior to the expiration of the grace period.

91.     Thus, Symetra's attempt to lapse the Policy was legally ineffective for this third statutory violation.

92.     Further, Symetra's notices were all ineffective because they sought an amount significantly higher than the minimum amount required to keep the Policy in force pursuant to its terms and conditions.

93.     Under Florida's statutory requirements and law, Symetra's attempt to lapse the Policy was, therefore, legally ineffective for this additional reason.

94.     No claim has been made under the Policy, as the insured is alive.

95.     Symetra has refused to withdraw its erroneous lapse notice and restore the Policy, despite being made aware of its numerous statutory and other violations.

96.     TOZ has been damaged by Symetra's statutory and other violations.

97.     Accordingly, TOZ is entitled to an order and judgment that Symetra's statutory and other violations rendered its lapse notice void and of no legal effect, that the Policy remains in full force and effect, and damages as a result of Symetra's statutory and other violations in an amount that will be proven at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

98.     TOZ repeats and realleges paragraphs 1 through 58 as if set forth fully and at length herein.

99.     If the Court concludes that the Policy has lapsed, then Symetra has been unjustly enriched to the material financial detriment of TOZ.

100.    TOZ conferred a benefit on Symetra in the form of excessive premium payments, of which Symetra had knowledge.

101.    Symetra has voluntarily accepted and retained the premium payments made by TOZ for the Policy.

102.    Under the circumstances, it would be inequitable for Symetra to retain the benefit of the premium payments without first paying the value thereof to Symetra.

103.    Accordingly, TOZ is entitled to recovery the value of the premiums that it has paid for the Policy—in excess of $400,000—for which TOZ would have received no benefit if Symetra's lapse is deemed valid.

**JURY TRIAL DEMAND**

104.    TOZ demands a jury trial on all issues so triable.

105.    TOZ has been required to retain and pay attorneys in order to enforce its rights under the Policy and applicable law, and accordingly is entitled to the recovery of the

reasonable fees that it has and will incur in its prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, TOZ respectfully requests that a judgment be awarded by the Court against Symetra on the Causes of Action herein as follows:

    a.    On the First Cause of Action, specific performance of the Policy without regard to Symetra's erroneous lapse notice, and compensatory damages in an amount that will be proven at trial, plus the recovery of its reasonable attorneys' fees incurred with respect to this dispute and action, and the costs, expenses and disbursements of this action;

    b.    On the Second Cause of Action, a judicial declaration that Symetra's lapse notice is of no legal effect and violates the provisions of the Policy and that the Policy remains in full force and effect, plus the recovery of its reasonable attorneys' fees incurred with respect to this dispute and action, and the costs, expenses and disbursements of this action;

    c.    On the Third Cause of Action, an order and judgment that Symetra's statutory and other violations rendered its lapse notice void and of no legal effect, that the Policy remains in full force and effect, and damages as a result of Symetra's statutory and other violations in an amount that will be proven at trial, plus the recovery of its reasonable attorneys' fees incurred with respect to this dispute and action, and the costs, expenses and disbursements of this action;

    d.    On the Fourth Cause of Action, if the Policy lapse is deemed valid, then TOZ should recover the value of the premiums that it has paid for the Policy—in excess of $400,000, and in an amount that will be proven at trial— plus the

recovery of its reasonable attorneys' fees incurred with respect to this dispute and action, and the costs, expenses and disbursements of this action;

e.    Pre- and post-judgment interest on the sums requested above; and

f.    Awarding such other and/or further relief that the Court deems just, equitable, and proper, including but not limited to attorneys' fees.

Dated   April 9, 2024

| RODRIGUEZ TRAMONT & NUÑEZ, P.A. | ARENTFOX SCHIFF LLP |
|---|---|
| 255 Alhambra Circle, Suite 1150 | By: */s/ James M. Westerlind* |
| Coral Gables, Florida 33134 | James M. Westerlind |
| Telephone: 305-350-2300 | Fla Bar #1038522 |
| BY: */s/ Andrew V. Tramont* | Anna Mandel |
| ANDREW V. TRAMONT, ESQ. | *(pro hac vice application to be filed)* |
| Florida Bar No. 322830 | 1301 Avenue of the Americas |
| avt@rtgn-law.com | New York, NY   10019 |
| PAUL M. NUÑEZ | Tel.: (212) 484-3900 |
| Florida Bar No. 124205 | Fax: (212) 484-3990 |
| pmn@rtgn-law.com | Email: james.westerlind@afslaw.com |
| | |
| *Counsel for Plaintiff TOZ Partners LLC* | *Counsel for Plaintiff TOZ Partners LLC* |

- 13 -

# Exhibit A

# Life Insurance Policy

**Insured:** ELLEN J JOSEPH
**Policy Number:** US00017266

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- Symetra Life Insurance Company will pay the insurance benefits and provide other rights and benefits of this policy in accordance with its provisions.
- This is a flexible premium adjustable life insurance policy and has been issued in consideration of the application and payment of the first premium.
- Premiums are flexible and you may vary the amount and timing of your premiums.
- This policy is nonparticipating. It does not share in our profits or surplus earnings. We pay no dividends on this policy.

### THIS POLICY IS A LEGAL CONTRACT BETWEEN YOU AND US. PLEASE READ YOUR POLICY CAREFULLY.

Signed for Symetra Life Insurance Company, a stock company, at its Bellevue, Washington office on the Issue Date.

*Margaret Meist*
Margaret Meister
President

*Jacqueline M. Veneziani*
Jacqueline M. Veneziani
Secretary

**RIGHT TO EXAMINE THE POLICY: Within 30 days after this policy is received, it may be cancelled by delivering or mailing it to the insurance producer through whom it was purchased, or any insurance producer of Symetra, or to our Administrative Office. Upon cancellation, all money will be refunded.**

**If this Policy is surrendered, a substantial penalty may result because the Cash Value may be less than the Premium paid.**

**The Policy values are on an indeterminate basis and the initial interest rate is only guaranteed for one year.**

### IF YOU HAVE ANY QUESTIONS, COMMENTS OR COMPLAINTS, PLEASE CONTACT SYMETRA AT 1-800-796-3872

Flexible Premium Adjustable Life Insurance
Death Benefit Payable on Death of the Insured
Adjustable Death Benefit
Nonparticipating



**SYMETRA**
RETIREMENT | BENEFITS | LIFE

Symetra® is a registered service mark of
Symetra Life Insurance Company.
L-10124/FL 12/14

---

**SYMETRA LIFE INSURANCE COMPANY**

A STOCK COMPANY

**777 108th Avenue NE, Ste 1200 Bellevue, WA 98004
Administrative Office: PO Box 549291, Waltham, MA 02454-9291
1-800-796-3872; TTY/TDD 1-800-833-6388 (Deaf/HH)**

## *TABLE OF CONTENTS*

COVERAGE DESCRIPTION ........................................................................................2

1. DEFINITIONS..................................................................................................3
2. GENERAL PROVISIONS..................................................................................5
2.1    The Entire Contract ..................................................................................5
2.2    Change of Contract ..................................................................................5
2.3    Coverage Effectiveness ...........................................................................5
2.4    Applicable Tax Law ..................................................................................5
2.5    Policy Cost Factors ..................................................................................6
2.6    Incontestability..........................................................................................6
2.7    Misstatement of Age and/or Gender ........................................................6
2.8    Suicide Exclusion ....................................................................................7
2.9    Policy Termination....................................................................................7
2.10  Policy Continuation after Expiry Date.......................................................7
2.11  Basis of Computations ............................................................................8
2.12  Reports to Owner ....................................................................................8
3. OWNER AND BENEFICIARY PROVISIONS ....................................................9
3.1    Owner.......................................................................................................9
3.2    Beneficiary................................................................................................9
3.3    Changing Owner or Beneficiary ...............................................................9
3.4    Assignment...............................................................................................9
4. PREMIUM PROVISIONS................................................................................10
4.1    Minimum Monthly Premiums...................................................................10
4.2    Planned Periodic Premiums....................................................................10
4.3    Flexible Premiums..................................................................................10
4.4    Grace Period ..........................................................................................10
4.5    No Lapse Guarantee ..............................................................................11
4.6    Reinstatement ........................................................................................11
5. POLICY VALUE PROVISIONS.......................................................................12
5.1    Accumulation Value................................................................................12
5.2    Declared Rate(s) ....................................................................................12
5.3    Monthly Deduction..................................................................................12
5.4    Cost of Insurance ...................................................................................12

5.5     Policy Loans ...................................................................................................... 13

5.6     Loan Interest ...................................................................................................... 13

5.7     Loan Repayment ............................................................................................... 14

5.8     Policy Surrender ................................................................................................ 14

5.9     Partial Withdrawals ........................................................................................... 14

5.10    Surrender Charges ........................................................................................... 15

5.11    Extended Insurance ......................................................................................... 15

6. CHANGES IN INSURANCE COVERAGE ................................................................. 16

6.1     Increase in Face Amount .................................................................................. 16

6.2     Decrease in Face Amount ................................................................................. 16

6.3     Change in Death Benefit Option ........................................................................ 16

6.4     Reclassification ................................................................................................. 17

7. INSURANCE COVERAGE PROVISIONS ................................................................. 17

7.1     Death of Insured ............................................................................................... 17

7.2     Amount of Death Benefit ................................................................................... 18

8. DEATH BENEFIT PAYMENT PROVISIONS ............................................................. 19

8.1     Methods of Payment ......................................................................................... 19

8.2     Alternate Option ................................................................................................ 19

POLICY NUMBER: US00017266

*COVERAGE DESCRIPTION* --------------------------------------------------------------------------------------------------------------

**INSURED:** ELLEN J JOSEPH
**ISSUE AGE:** 75
**STATE OF ISSUE:** FL
**CLASS:** STANDARD FEMALE NON-NICOTINE

**INITIAL FACE AMOUNT:**  $6,500,000
**INITIAL PREMIUM:**  $240,552.00
**POLICY DATE:** MAR 04, 2020
**ISSUE DATE:** APR 08, 2020
**MONTHLY ANNIVERSARY:** 4TH DAY OF EACH MONTH

| FACE AMOUNT | COVERAGE* | EXPIRY DATE** |
|---|---|---|
| $6,500,000 | LIFE INSURANCE | MAR 04, 2065 |
| | LAPSE PROTECTION BENEFIT | MAR 04, 2065 |
| | CHRONIC ILLNESS ACCELERATED DB | MAR 04, 2065 |
| | TERMINAL ILLNESS ACCELERATED DB | MAR 04, 2065 |

**Your State Insurance Regulator may be contacted at
Florida Office of Insurance Regulation - (850) 413-3140.**

\*  Coverage may expire if premiums paid are insufficient to continue coverage as outlined in your Policy.
See your Policy Provisions.

\*\*  A policy that extends beyond the Expiry Date may not qualify as life insurance under the Internal Revenue Code
or successor law and may be subject to adverse tax consequences. You should consult your tax advisor before
choosing to continue this Policy beyond the Expiry Date.

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION* ----------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| Premium Payment Mode: | ANNUAL |
| Planned Periodic Premium: | $240,552.00 |
| Minimum Monthly Premium: | N/A |
| Death Benefit Compliance Test: | Cash Value Accumulation Test |
| Modified Endowment Contract (MEC) Status: | This Policy is not a MEC on the Issue Date |
| Death Benefit Option: | A - Face Amount |
| The Face Amount of this Policy may not be reduced below: | $3,250,000 |
| Guaranteed Minimum Interest Rate: | 2.0% |
| Maximum Premium Expense Charges: | 9.0% of Premium in all Policy years |
| Maximum Monthly Expense Charge: | $30.00 plus $1.04 per $1000 of Initial Face Amount |
| Reinstatement Period: | Three years after the end of any Grace Period |

*COVERAGE DESCRIPTION* ----------------------------------------------------------------------------------------------------------------------------

### *TABLE OF APPLICABLE PERCENTAGES*

This Policy complies with the Cash Value Accumulation Test under Section 7702 of the Internal Revenue Code, which requires that the total Death Benefit be greater than or equal to the Accumulation Value multiplied by the Applicable Percentage from the following table.

| Attained Age of Insured | Applicable Percentage |
|---|---|
| 75 | 170.861041 |
| 76 | 164.696339 |
| 77 | 160.171426 |
| 78 | 155.871215 |
| 79 | 151.792356 |
| 80 | 147.938137 |
| 81 | 144.317650 |
| 82 | 140.925982 |
| 83 | 137.712945 |
| 84 | 134.659862 |
| 85 | 131.775150 |
| 86 | 129.156617 |
| 87 | 126.703882 |
| 88 | 124.406077 |
| 89 | 122.268860 |
| 90 | 120.279263 |
| 91 | 118.419987 |
| 92 | 116.662029 |
| 93 | 114.980727 |
| 94 | 113.344022 |
| 95 | 111.687785 |
| 96 | 109.952076 |
| 97 | 108.090593 |
| 98 | 105.975370 |
| 99 | 103.395526 |
| 100+ | 100.000000 |

**POLICY NUMBER: US00017266**

*COVERAGE DESCRIPTION* --------------------------------------------------------------------------------------------------------------------

### TABLE OF SURRENDER CHARGES

SCHEDULE FOR INSURED:   ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | SURRENDER CHARGE PER $1,000 OF INITIAL FACE AMOUNT |
|:---:|:---:|
| 01 | 57.28 |
| 02 | 54.58 |
| 03 | 51.91 |
| 04 | 49.28 |
| 05 | 46.68 |
| 06 | 37.34 |
| 07 | 28.00 |
| 08 | 18.66 |
| 09 | 9.32 |
| 10+ | 0.00 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION* ----------------------------------------------------------------------------------------------------------------------------------

### SCHEDULE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES

### MONTHLY RATES PER $1,000 OF NET AMOUNT AT RISK

SCHEDULE FOR INSURED:   ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LIFE INSURANCE RATE |
|---|---|---|
| 001 | 2020 | $.30547 |
| 002 | 2021 | $1.52415 |
| 003 | 2022 | $1.73354 |
| 004 | 2023 | $1.97769 |
| 005 | 2024 | $2.26980 |
| 006 | 2025 | $2.62594 |
| 007 | 2026 | $3.03919 |
| 008 | 2027 | $3.44944 |
| 009 | 2028 | $3.89957 |
| 010 | 2029 | $4.44408 |
| 011 | 2030 | $5.28642 |
| 012 | 2031 | $6.04154 |
| 013 | 2032 | $6.89608 |
| 014 | 2033 | $7.91049 |
| 015 | 2034 | $9.05351 |
| 016 | 2035 | $10.32781 |
| 017 | 2036 | $11.70863 |
| 018 | 2037 | $13.23689 |
| 019 | 2038 | $14.92089 |
| 020 | 2039 | $16.65545 |
| 021 | 2040 | $18.56683 |
| 022 | 2041 | $20.99515 |
| 023 | 2042 | $23.75383 |
| 024 | 2043 | $26.87692 |
| 025 | 2044 | $30.35936 |
| 026 | 2045 | $34.19258 |
| 027 | 2046 | $37.54290 |
| 028 | 2047 | $41.00210 |
| 029 | 2048 | $44.51321 |
| 030 | 2049 | $48.01442 |
| 031 | 2050 | $51.43114 |
| 032 | 2051 | $54.67996 |
| 033 | 2052 | $59.13004 |
| 034 | 2053 | $64.10226 |
| 035 | 2054 | $69.69771 |
| 036 | 2055 | $76.04657 |
| 037 | 2056 | $83.31840 |
| 038 | 2057 | $83.33333 |
| 039 | 2058 | $83.33333 |
| 040 | 2059 | $83.33333 |

**POLICY NUMBER: US00017266**

*COVERAGE DESCRIPTION* ----------------------------------------------------------------------------------------------------------------

### SCHEDULE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES

### MONTHLY RATES PER $1,000 OF NET AMOUNT AT RISK

SCHEDULE FOR INSURED:    ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LIFE INSURANCE RATE |
|---|---|---|
| 041 | 2060 | $83.33333 |
| 042 | 2061 | $83.33333 |
| 043 | 2062 | $83.33333 |
| 044 | 2063 | $83.33333 |
| 045 | 2064 | $83.33333 |

*COVERAGE DESCRIPTION*_____

### *SCHEDULE OF BENEFIT RIDER CHARGES*

### *ANNUAL RATES PER $1,000 OF FACE VALUE*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | RATE PER UNIT OF FACE VALUE |
|---|---|---|
| 001 | 2020 | 1.31000 |
| 002 | 2021 | 1.31000 |
| 003 | 2022 | 1.31000 |
| 004 | 2023 | 1.20000 |
| 005 | 2024 | 1.20000 |
| 006 | 2025 | 1.20000 |
| 007 | 2026 | 1.20000 |
| 008 | 2027 | 1.20000 |
| 009 | 2028 | 1.20000 |
| 010 | 2029 | 1.20000 |
| 011 | 2030 | 15.75000 |
| 012 | 2031 | 15.75000 |
| 013 | 2032 | 15.75000 |
| 014 | 2033 | 15.75000 |
| 015 | 2034 | 15.75000 |
| 016 | 2035 | 15.75000 |
| 017 | 2036 | 15.75000 |
| 018 | 2037 | 15.75000 |
| 019 | 2038 | 15.75000 |
| 020 | 2039 | 26.25000 |
| 021 | 2040 | 26.25000 |
| 022 | 2041 | 26.25000 |
| 023 | 2042 | 26.25000 |
| 024 | 2043 | 26.25000 |
| 025 | 2044 | 26.25000 |
| 026 | 2045 | 26.25000 |
| 027 | 2046 | 26.25000 |
| 028 | 2047 | 26.25000 |
| 029 | 2048 | 26.25000 |
| 030 | 2049 | 26.25000 |
| 031 | 2050 | 26.25000 |
| 032 | 2051 | 26.25000 |
| 033 | 2052 | 26.25000 |
| 034 | 2053 | 26.25000 |
| 035 | 2054 | 26.25000 |
| 036 | 2055 | 26.25000 |
| 037 | 2056 | 26.25000 |
| 038 | 2057 | 26.25000 |
| 039 | 2058 | 26.25000 |
| 040 | 2059 | 26.25000 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION*_____

### SCHEDULE OF BENEFIT RIDER CHARGES

### ANNUAL RATES PER $1,000 OF FACE VALUE

**SCHEDULE FOR PRIMARY INSURED: ELLEN J JOSEPH**

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | RATE PER UNIT OF FACE VALUE |
|---|---|---|
| 041 | 2060 | 26.25000 |
| 042 | 2061 | 26.25000 |
| 043 | 2062 | 26.25000 |
| 044 | 2063 | 26.25000 |
| 045 | 2064 | 26.25000 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION*

### LAPSE PROTECTION BENEFIT RIDER

*LAPSE PROTECTION FUNDING LEVEL CHARGE THRESHOLD
AND FUNDING LEVEL REQUIRED PREMIUM*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION FUNDING LEVEL CHARGE THRESHOLD (per $1000 of Face Amount) | FUNDING LEVEL REQUIRED PREMIUM (in dollars) |
|---|---|---|---|
| 001 | 2020 | 2.0182598239 | 31.8724018560 |
| 002 | 2021 | 26.1490014341 | 31.8724018560 |
| 003 | 2022 | 51.9493934528 | 31.8724018560 |
| 004 | 2023 | 78.3216296598 | 31.8724018560 |
| 005 | 2024 | 105.2442660229 | 31.8724018560 |
| 006 | 2025 | 132.7331282834 | 31.8724018560 |
| 007 | 2026 | 160.7000345835 | 31.8724018560 |
| 008 | 2027 | 188.6184637705 | 31.8724018560 |
| 009 | 2028 | 216.3599358970 | 31.8724018560 |
| 010 | 2029 | 244.1118752348 | 31.8724018560 |
| 011 | 2030 | 271.7828156020 | 31.8724018560 |
| 012 | 2031 | 299.2698667428 | 31.8724018560 |
| 013 | 2032 | 327.0120482659 | 31.8724018560 |
| 014 | 2033 | 354.3018837942 | 31.8724018560 |
| 015 | 2034 | 381.1465257324 | 31.8724018560 |
| 016 | 2035 | 407.5603863146 | 31.8724018560 |
| 017 | 2036 | 434.0866243815 | 31.8724018560 |
| 018 | 2037 | 462.5967465932 | 31.8724018560 |
| 019 | 2038 | 491.8725502115 | 31.8724018560 |
| 020 | 2039 | 521.2819554988 | 31.8724018560 |
| 021 | 2040 | 550.8854419042 | 31.8724018560 |
| 022 | 2041 | 580.8650248801 | 31.8724018560 |
| 023 | 2042 | 611.3453734240 | 31.8724018560 |
| 024 | 2043 | 642.9553087042 | 31.8724018560 |
| 025 | 2044 | 679.9840118765 | 31.8724018560 |
| 026 | 2045 | 721.8068600005 | 31.8724018560 |
| 027 | 2046 | 768.6384996600 | 31.8724018560 |
| 028 | 2047 | 822.2410910399 | 31.8724018560 |
| 029 | 2048 | 884.9220265219 | 31.8724018560 |
| 030 | 2049 | 960.0440432785 | 31.8724018560 |
| 031 | 2050 | 1043.1314556326 | 31.8724018560 |
| 032 | 2051 | 1060.9788357664 | 31.8724018560 |
| 033 | 2052 | 1073.0142172898 | 31.8724018560 |
| 034 | 2053 | 1074.2189723006 | 31.8724018560 |
| 035 | 2054 | 1065.6918057622 | 31.8724018560 |
| 036 | 2055 | 1049.1922607360 | 31.8724018560 |
| 037 | 2056 | 1024.5886399282 | 31.8724018560 |
| 038 | 2057 | 991.6517507758 | 31.8724018560 |
| 039 | 2058 | 949.2231333645 | 31.8724018560 |
| 040 | 2059 | 888.9782896603 | 31.8724018560 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION* _____

### LAPSE PROTECTION BENEFIT RIDER

*LAPSE PROTECTION FUNDING LEVEL CHARGE THRESHOLD*
*AND FUNDING LEVEL REQUIRED PREMIUM*

**SCHEDULE FOR PRIMARY INSURED:**  ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION FUNDING LEVEL CHARGE THRESHOLD (per $1000 of Face Amount) | FUNDING LEVEL REQUIRED PREMIUM (in dollars) |
|---|---|---|---|
| 041 | 2060 | 804.1516389629 | 31.8724018560 |
| 042 | 2061 | 686.5543686925 | 31.8724018560 |
| 043 | 2062 | 524.0653053090 | 31.8724018560 |
| 044 | 2063 | 302.3186397911 | 31.8724018560 |
| 045 | 2064 | 0.0000000000 | 31.8724018560 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION*

### LAPSE PROTECTION BENEFIT RIDER

*LAPSE PROTECTION INTEREST RATES*
*(ANNUAL RATES)*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION INTEREST RATE (Tier 1) | LAPSE PROTECTION INTEREST RATE (Tier 2) | LAPSE PROTECTION THRESHOLD (per $1000 of Face Amount) |
|---|---|---|---|---|
| 001 | 2020 | 00.0000000000 | 00.0000000000 | 38.8214074529 |
| 002 | 2021 | 06.9200000000 | 01.2527294922 | 61.2188321784 |
| 003 | 2022 | 06.9200000000 | 01.2527294922 | 86.6457681165 |
| 004 | 2023 | 06.9200000000 | 01.2527294922 | 112.6387107647 |
| 005 | 2024 | 06.9200000000 | 01.2527294922 | 139.1769281518 |
| 006 | 2025 | 06.9200000000 | 01.2527294922 | 166.2766156493 |
| 007 | 2026 | 06.9200000000 | 01.2527294922 | 193.8524115041 |
| 008 | 2027 | 06.9200000000 | 01.2527294922 | 221.3864128188 |
| 009 | 2028 | 06.9200000000 | 01.2527294922 | 248.7526161235 |
| 010 | 2029 | 06.9200000000 | 01.2527294922 | 276.1371040571 |
| 011 | 2030 | 06.9200000000 | 06.9186988015 | 303.4514899880 |
| 012 | 2031 | 06.9200000000 | 06.9186988015 | 330.5951334922 |
| 013 | 2032 | 06.9200000000 | 06.9186988015 | 358.0043464624 |
| 014 | 2033 | 06.9200000000 | 06.9186988015 | 384.9848023796 |
| 015 | 2034 | 06.9200000000 | 06.9186988015 | 411.5471685361 |
| 016 | 2035 | 06.9200000000 | 06.9186988015 | 437.7092373446 |
| 017 | 2036 | 06.9200000000 | 06.9186988015 | 464.0064534436 |
| 018 | 2037 | 06.9200000000 | 06.9186988015 | 492.2903149451 |
| 019 | 2038 | 06.9200000000 | 06.9186988015 | 521.3713206005 |
| 020 | 2039 | 06.9200000000 | 06.9186988015 | 550.6386989374 |
| 021 | 2040 | 06.9200000000 | 06.9186988015 | 580.1666446189 |
| 022 | 2041 | 06.9200000000 | 06.9186988015 | 610.1540475441 |
| 023 | 2042 | 06.9200000000 | 06.9186988015 | 640.7501262118 |
| 024 | 2043 | 06.9200000000 | 06.9186988015 | 676.8004418685 |
| 025 | 2044 | 06.9200000000 | 06.9186988015 | 718.2643667861 |
| 026 | 2045 | 06.9200000000 | 06.9186988015 | 764.6100895051 |
| 027 | 2046 | 06.9200000000 | 06.9186988015 | 817.5647640534 |
| 028 | 2047 | 06.9200000000 | 06.9186988015 | 879.3612074784 |
| 029 | 2048 | 06.9200000000 | 06.9186988015 | 953.2638687824 |
| 030 | 2049 | 06.9200000000 | 06.9186988015 | 1041.6505914493 |
| 031 | 2050 | 06.9200000000 | 06.9186988015 | 1078.5561138143 |
| 032 | 2051 | 06.9200000000 | 06.9186988015 | 1095.7523159478 |
| 033 | 2052 | 06.9200000000 | 06.9186988015 | 1107.0914579533 |
| 034 | 2053 | 06.9200000000 | 06.9186988015 | 1112.0902470531 |
| 035 | 2054 | 06.9200000000 | 06.9186988015 | 1110.3397002448 |
| 036 | 2055 | 06.9200000000 | 06.9186988015 | 1101.1605473462 |
| 037 | 2056 | 06.9200000000 | 06.9186988015 | 1083.9978344457 |
| 038 | 2057 | 06.9200000000 | 06.9186988015 | 1058.7119491024 |
| 039 | 2058 | 06.9200000000 | 06.9186988015 | 1025.1073614075 |
| 040 | 2059 | 06.9200000000 | 06.9186988015 | 981.7037971137 |

*COVERAGE DESCRIPTION*

## LAPSE PROTECTION BENEFIT RIDER

### *LAPSE PROTECTION INTEREST RATES*
### *(ANNUAL RATES)*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION INTEREST RATE (Tier 1) | LAPSE PROTECTION INTEREST RATE (Tier 2) | LAPSE PROTECTION THRESHOLD (per $1000 of Face Amount) |
|---|---|---|---|---|
| 041 | 2060 | 06.9200000000 | 06.9186988015 | 919.6541679366 |
| 042 | 2061 | 06.9200000000 | 06.9186988015 | 832.4295924908 |
| 043 | 2062 | 06.9200000000 | 06.9186988015 | 711.5616099733 |
| 044 | 2063 | 06.9200000000 | 06.9186988015 | 544.7639694571 |
| 045 | 2064 | 06.9200000000 | 06.9186988015 | 317.1774441428 |

**LAPSE PROTECTION BENEFIT RIDER**

*SCHEDULE OF LAPSE PROTECTION BENEFIT FACTORS*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

**LAPSE PROTECTION PREMIUM FACTOR: 100.00%**

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION*

## LAPSE PROTECTION BENEFIT RIDER
### *SCHEDULE OF LAPSE PROTECTION BENEFIT CHARGES*
### *LAPSE PROTECTION FACE AMOUNT CHARGE AND LAPSE PROTECTION ADMINISTRATIVE CHARGE*
### *(ANNUAL RATES)*

**SCHEDULE FOR PRIMARY INSURED:** ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION FACE AMOUNT CHARGE (per $1000 of Face Amount) | LAPSE PROTECTION ADMINISTRATIVE CHARGE (in dollars) |
|---|---|---|---|
| 001 | 2020 | 17.5515065655 | $324.00 |
| 002 | 2021 | 1.9171055992 | $324.00 |
| 003 | 2022 | 2.0901856169 | $324.00 |
| 004 | 2023 | 2.2803232407 | $324.00 |
| 005 | 2024 | 2.4839437313 | $324.00 |
| 006 | 2025 | 2.7103373641 | $324.00 |
| 007 | 2026 | 3.0199468549 | $324.00 |
| 008 | 2027 | 3.3669715638 | $324.00 |
| 009 | 2028 | 3.7080467988 | $324.00 |
| 010 | 2029 | 4.0824384594 | $324.00 |
| 011 | 2030 | 4.5018045193 | $324.00 |
| 012 | 2031 | 4.8743394772 | $324.00 |
| 013 | 2032 | 5.3852718699 | $324.00 |
| 014 | 2033 | 5.9249628318 | $324.00 |
| 015 | 2034 | 6.5001361573 | $324.00 |
| 016 | 2035 | 7.0486003174 | $324.00 |
| 017 | 2036 | 7.2993786815 | $324.00 |
| 018 | 2037 | 7.8319477572 | $324.00 |
| 019 | 2038 | 8.5577386545 | $324.00 |
| 020 | 2039 | 9.3533170112 | $324.00 |
| 021 | 2040 | 10.2059014358 | $324.00 |
| 022 | 2041 | 11.1491427456 | $324.00 |
| 023 | 2042 | 12.1717410176 | $324.00 |
| 024 | 2043 | 12.2899770818 | $324.00 |
| 025 | 2044 | 12.8683484082 | $324.00 |
| 026 | 2045 | 13.8234830569 | $324.00 |
| 027 | 2046 | 14.8337915229 | $324.00 |
| 028 | 2047 | 15.9564967591 | $324.00 |
| 029 | 2048 | 17.1725174567 | $324.00 |
| 030 | 2049 | 18.5042995923 | $324.00 |
| 031 | 2050 | 93.9055427127 | $324.00 |
| 032 | 2051 | 100.7314746658 | $324.00 |
| 033 | 2052 | 107.6441049985 | $324.00 |
| 034 | 2053 | 114.5062649701 | $324.00 |
| 035 | 2054 | 121.5853428603 | $324.00 |
| 036 | 2055 | 128.7433556631 | $324.00 |
| 037 | 2056 | 135.4941371600 | $324.00 |
| 038 | 2057 | 141.9233839897 | $324.00 |
| 039 | 2058 | 147.6112864322 | $324.00 |
| 040 | 2059 | 155.9123670162 | $324.00 |

POLICY NUMBER: US00017266

*COVERAGE DESCRIPTION*

## LAPSE PROTECTION BENEFIT RIDER
### *SCHEDULE OF LAPSE PROTECTION BENEFIT CHARGES*
### *LAPSE PROTECTION FACE AMOUNT CHARGE AND LAPSE PROTECTION ADMINISTRATIVE CHARGE*
### *(ANNUAL RATES)*

**SCHEDULE FOR PRIMARY INSURED:**  ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION FACE AMOUNT CHARGE (per $1000 of Face Amount) | LAPSE PROTECTION ADMINISTRATIVE CHARGE (in dollars) |
|---|---|---|---|
| 041 | 2060 | 163.4554849180 | $324.00 |
| 042 | 2061 | 171.2116593236 | $324.00 |
| 043 | 2062 | 179.7039286435 | $324.00 |
| 044 | 2063 | 187.3381363052 | $324.00 |
| 045 | 2064 | 195.0038313501 | $324.00 |

**POLICY NUMBER:** US00017266

*COVERAGE DESCRIPTION* _____ _____

### LAPSE PROTECTION BENEFIT RIDER

#### *SCHEDULE OF LAPSE PROTECTION BENEFIT CHARGES*

#### *LAPSE PROTECTION COST OF INSURANCE CHARGES*

#### *(ANNUAL RATES PER $1,000 OF LAPSE PROTECTION NET AMOUNT AT RISK)*

SCHEDULE FOR PRIMARY INSURED: ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION COST OF INSURANCE (Tier 1) | LAPSE PROTECTION COST OF INSURANCE (Tier 2) | LAPSE PROTECTION NET AMOUNT AT RISK THRESHOLD |
|---|---|---|---|---|
| 001 | 2020 | 0.0000000000 | 0.0000000000 | 994.3632839197 |
| 002 | 2021 | 17.2140969939 | 230.5947824569 | 973.7966245204 |
| 003 | 2022 | 18.7682191107 | 253.0783654197 | 952.0410568123 |
| 004 | 2023 | 20.4755050838 | 277.9286413260 | 930.0882989533 |
| 005 | 2024 | 22.3038565714 | 304.7511613518 | 908.0147380488 |
| 006 | 2025 | 24.3366929242 | 334.7292719688 | 885.8584631734 |
| 007 | 2026 | 27.1167420812 | 375.4363905962 | 863.7385738576 |
| 008 | 2027 | 30.2327504019 | 421.3502336991 | 842.3216523547 |
| 009 | 2028 | 33.2953371360 | 467.1062972725 | 821.8853797475 |
| 010 | 2029 | 36.6570791088 | 517.6746364976 | 802.3433934205 |
| 011 | 2030 | 40.4226557335 | 574.6330466700 | 783.9492317273 |
| 012 | 2031 | 43.7677259801 | 626.3058426020 | 767.0760003431 |
| 013 | 2032 | 48.3554960893 | 704.0911506768 | 751.3730429853 |
| 014 | 2033 | 53.2014954798 | 785.3476084020 | 737.9943835091 |
| 015 | 2034 | 58.3660985239 | 871.9685701323 | 727.3243826872 |
| 016 | 2035 | 63.2908743174 | 63.2908743174 | 1000.0000000000 |
| 017 | 2036 | 65.5426663349 | 65.5426663349 | 1000.0000000000 |
| 018 | 2037 | 70.3247168010 | 70.3247168010 | 1000.0000000000 |
| 019 | 2038 | 76.8417469055 | 76.8417469055 | 1000.0000000000 |
| 020 | 2039 | 83.9854133805 | 83.9854133805 | 1000.0000000000 |
| 021 | 2040 | 91.6409494063 | 91.6409494063 | 1000.0000000000 |
| 022 | 2041 | 100.1105127950 | 100.1105127950 | 1000.0000000000 |
| 023 | 2042 | 109.2926391463 | 109.2926391463 | 1000.0000000000 |
| 024 | 2043 | 110.3543057953 | 110.3543057953 | 1000.0000000000 |
| 025 | 2044 | 115.5476243664 | 115.5476243664 | 1000.0000000000 |
| 026 | 2045 | 124.1239805623 | 124.1239805623 | 1000.0000000000 |
| 027 | 2046 | 133.1957541436 | 133.1957541436 | 1000.0000000000 |
| 028 | 2047 | 143.2767621168 | 143.2767621168 | 1000.0000000000 |
| 029 | 2048 | 154.1956693711 | 154.1956693711 | 1000.0000000000 |
| 030 | 2049 | 166.1540230818 | 166.1540230818 | 1000.0000000000 |
| 031 | 2050 | 95.8879114342 | 95.8879114342 | 1000.0000000000 |
| 032 | 2051 | 102.8579404619 | 102.8579404619 | 1000.0000000000 |
| 033 | 2052 | 109.9164980931 | 109.9164980931 | 1000.0000000000 |
| 034 | 2053 | 116.9235199215 | 116.9235199215 | 1000.0000000000 |
| 035 | 2054 | 124.1520388583 | 124.1520388583 | 1000.0000000000 |

2.16

**POLICY NUMBER: US00017266**

*COVERAGE DESCRIPTION* _____

**LAPSE PROTECTION BENEFIT RIDER**

*SCHEDULE OF LAPSE PROTECTION BENEFIT CHARGES*

*LAPSE PROTECTION COST OF INSURANCE CHARGES*

*(ANNUAL RATES PER $1,000 OF LAPSE PROTECTION NET AMOUNT AT RISK)*

SCHEDULE FOR PRIMARY INSURED: ELLEN J JOSEPH

| AT BEGINNING OF POLICY YEAR | ON MAR 04 | LAPSE PROTECTION COST OF INSURANCE (Tier 1) | LAPSE PROTECTION COST OF INSURANCE (Tier 2) | LAPSE PROTECTION NET AMOUNT AT RISK THRESHOLD |
|---|---|---|---|---|
| 036 | 2055 | 131.4611590429 | 131.4611590429 | 1000.0000000000 |
| 037 | 2056 | 138.3544511701 | 138.3544511701 | 1000.0000000000 |
| 038 | 2057 | 144.9194209555 | 144.9194209555 | 1000.0000000000 |
| 039 | 2058 | 150.7273963944 | 150.7273963944 | 1000.0000000000 |
| 040 | 2059 | 159.2037147975 | 159.2037147975 | 1000.0000000000 |
| 041 | 2060 | 166.9060697428 | 166.9060697428 | 1000.0000000000 |
| 042 | 2061 | 174.8259788662 | 174.8259788662 | 1000.0000000000 |
| 043 | 2062 | 183.4975220457 | 183.4975220457 | 1000.0000000000 |
| 044 | 2063 | 191.2928896778 | 191.2928896778 | 1000.0000000000 |
| 045 | 2064 | 199.1204093993 | 199.1204093993 | 1000.0000000000 |

The Lapse Protection Net Amount at Risk is equal to the Policy's current Death Benefit, discounted to the beginning of the month at the monthly equivalent of the Guaranteed Minimum Interest Rate, minus the Lapse Protection Value.

## *1. DEFINITIONS*

**Accumulation Value** – an amount that is used to determine the amount of the Death Benefit and certain Policy values. The calculation of this amount is described under "Accumulation Value." Referred to in some riders and supplementary benefits as "Accumulation Fund."

**Accumulated Minimum Monthly Premium** – an amount equal to the sum of the Minimum Monthly Premiums for each month since the Issue Date, including the current month.

**Adjusted Premium** – an amount equal to the sum of all premiums received (or paid by Us under any waiver benefit) since the Issue Date minus any withdrawals since the Issue Date, any loans, and any loan interest.

**Administrative Office** – Our office that administers this Policy. As of the Issue Date, the address of the Administrative Office is as shown on the cover of this Policy. The address may be changed by Us. We will send You a written notice of any such change to Your address on record with Us.

**Applicable Percentages** – percentages by which the Policy's Accumulation Fund is multiplied to determine the minimum amount of the Death Benefit necessary to maintain the advantages of life insurance as described under "Applicable Tax Law."

**Attained Age** – the age of the Insured (or a Payee) on their nearest birthday as of the most recently attained Policy Anniversary.

**Cash Surrender Value** – an amount equal to the Accumulation Value reduced by any Surrender Charges, as described under "Surrender Charges."

**Class** – the gender, risk and underwriting classification for any Insured, as shown in the Coverage Description.

**Cost of Insurance** – a charge deducted monthly from the Accumulation Value for the insurance coverage provided by this Policy.

**Death Benefit** – the amount paid on the death of the Insured as described under "Death of Insured."

**Declared Rate** – the rate used for crediting interest to Your Accumulation Value.

**Expense Charges** – the monthly charges deducted from the Accumulation Value to cover administrative and other insurance-related expenses.

**Expiry Date** – the date the coverage ends, as specified in the Coverage Description.

**Face Amount** – an amount, shown in the Coverage Description, used to determine the Death Benefit.

**Flat Extra** – a dollar amount charged for extra mortality which, if applicable, will be specified on the Coverage Description.

**Grace Period** – a period of time following the Monthly Anniversary upon which the Policy had insufficient value, as described under "Grace Period."

**"in force"** – means when insurance coverage under this Policy is in effect.

**"in good order"** – means having fulfilled all of the requirements necessary for Us to complete a given request.

**Initial Premium** – the dollar amount specified as such in the Coverage Description.

**Insured** – the person identified as such in the Coverage Description. Referred to in some riders and supplementary benefits as "Primary Insured."

**Issue Date** – the date, shown on the Coverage Description, on which the Policy is generated. Additional information or requirements may be necessary to put the Policy in force.

**Monthly Anniversary** – the same day in each succeeding month as the day of the month corresponding to the Policy Date. For purposes of calculating the Accumulation Value, the Monthly Anniversary will include the Policy Date.

**Monthly Deduction** – a charge deducted from the Accumulation Value on each Monthly Anniversary. Details of the charge are described under "Monthly Deduction."

**Net Amount at Risk** – on any Monthly Anniversary, the current Death Benefit, discounted to the beginning of the month at the monthly equivalent of the Guaranteed Minimum Interest Rate, minus Your Accumulation Value before it has been reduced by the Monthly Deduction.

**Net Cash Surrender Value** – the Cash Surrender Value reduced by any outstanding loans and applicable loan interest.

**Net Premium** – Premium less the Premium Expense Charge shown on the Coverage Description.

**Partial Withdrawal** – a withdrawal of a portion of the Net Cash Surrender Value. The maximum Partial Withdrawal and its impact to the Policy are described under "Partial Withdrawal."

**Payee** – a person legally entitled to proceeds of this Policy, typically the beneficiary.

**Policy** – this life insurance contract.

**Policy Anniversary** – the anniversary of the Policy Date.

**Policy Date** – the date, specified as such in the Coverage Description. "Policy years" and "Policy months" are measured from the Policy Date.

**Premium** – an amount paid to us as consideration for the benefits of this Policy.

**Published Monthly Average** – the Moody's Corporate Bond Yield Average—Monthly Average Corporates as published by Moody's Investors Service, Inc., or any successor thereof. In the event Moody's Corporate Bond Yield Average—Monthly Average Corporates is no longer published, a substantially similar average, established by Your state insurance regulator.

**Rider Insured(s)** – the person(s) identified as such in the Coverage Description. Referred to in some riders and supplementary benefits as "Insured."

**Surrender Charge** – the amount, specified in the Coverage Description, which is subtracted from the Accumulation Value when the Policy is surrendered and/or the Face Amount is decreased.

**We, Our,** and **Us** – Symetra Life Insurance Company.

**You** and **Your** – the owner(s) of the Policy at the time an ownership right is exercised.

## 2. GENERAL PROVISIONS

### 2.1 The Entire Contract

This Policy is Our contract with You. We issue this Policy in consideration of Your application and payment of the Initial Premium.

The entire contract is made up of this Policy, attached copies of the application(s), including any questionnaires for issuance or reinstatement of the Policy, and attached copies of all coverage descriptions, endorsements, amendments, riders and Policy change forms.

We will send You copies of any additional coverage descriptions, applications, endorsements, amendments, or riders for any changes made in the future; You will be responsible for attaching the new pages to the Policy. If You fail to attach them, they will be deemed to be attached to this Policy as of the date the change is effective.

### 2.2 Change of Contract

Only our President, Secretary, a Vice President, or Assistant Secretary can modify this Policy or waive any of Our rights or requirements under it. The person making these changes must put them in writing and sign them.

### 2.3 Coverage Effectiveness

Coverage will take effect and be in force on the later of the Issue Date or the date the Initial Premium is received in good order at our Administrative Office. In some riders or supplemental benefits, the date of coverage effectiveness is referred to as the "Effective Date" or the "Policy Effective Date."

### 2.4 Applicable Tax Law

For You and the beneficiary to receive the tax treatment accorded to life insurance under federal law, this Policy must continually qualify as life insurance under Section 7702 of the Internal Revenue Code of 1986 or successor law. Therefore, if a Premium paid under this Policy exceeds the amount allowable for such qualification, unless necessary to continue coverage, we will refund the Premium to You with interest within 60 days after the end of Policy year in which the premium was received. Such interest will be credited at the current rate We are then paying on this Policy and will be based on the period of time during which the excess Premium was credited to the Policy.

In addition, We reserve the right to decline to allow any Partial Withdrawals or Face Amount reductions that would cause this Policy to fail to qualify as life insurance under applicable tax law as interpreted by Us. We also reserve the right to amend this Policy by endorsement as necessary to assure qualification under Section 7702.

If this Policy was not a Modified Endowment Contract ("MEC") under Section 7702A of the Internal Revenue Code on the Issue Date, it could subsequently become a MEC if You make a contractual change to this Policy or You pay a Premium in excess of the Planned Periodic Premium. In such case, We reserve the right to take whatever action is necessary in our judgment to prevent, if possible, this Policy from becoming a MEC, unless You have specifically indicated to us in writing that You want a MEC. We will send You a letter explaining Our action. Any such actions on Our part will apply uniformly to all policies that are affected.

For information about these or other tax matters relating to life insurance taxation, consult your attorney, accountant or other qualified tax advisor.

## 2.5 Policy Cost Factors

Changes in Policy cost factors (interest rates We credit, Cost of Insurance deductions, and Expense Charges) will be based upon changes in future expectations for such elements as investment earnings, mortality, persistency, reserve or capital requirements, expenses and taxes. We cannot change the current factors for this Policy to recover Our losses or distribute Our gains realized prior to the date of change. Any change in Policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this Policy is delivered.

## 2.6 Incontestability

We have the right to contest the validity of this Policy and any Policy riders based on material misrepresentations made in the initial application, in subsequent applications attached to the Policy, or in any amendment or endorsement to the applications. With respect to each Insured, coverage under this Policy will be incontestable after it has been in effect during the lifetime of that Insured for two years or, in the case of a reinstated Policy, two years after the effective date of the reinstatement.

We will not use a statement to contest a claim unless it is contained in an application or an amendment or endorsement to an application which is made a part of the Policy. For any reinstatement, the contest shall be limited to statements made in the reinstatement application, unless the original contestability period has not yet expired. All statements made in an application are deemed representations and not warranties.

See any supplementary benefits and riders for modifications of this provision that apply to them.

## 2.7 Misstatement of Age and/or Gender

If an Insured's age and/or gender has been misstated on any application, We will adjust the Death Benefit and any Policy riders and supplementary benefits to an amount that would have been purchased at the correct age and/or gender.

The adjusted amount will be based on the Cost of Insurance and Expense Charges that were in effect on the Policy Date. If the correct age is outside of the allowed issue ages of the Policy, the Cost of Insurance and Death Benefit shall be actuarially extrapolated.

The Death Benefit after the recalculation will not be less than the Cash Surrender Value that would have been paid had the Policy been surrendered on the date of death based on the misstated age.

When the adjustment occurs at time of surrender, Policy Expiry, or death of the Insured, We will assume that the Death Benefit in all preceding years is the actual death benefit that would have been paid under the corrected age of the Insured had the death occurred in one of those preceding years.

### 2.8   Suicide Exclusion

If the Insured commits suicide, while sane or insane, within two years after the Issue Date, the proceeds payable will be limited to:

- the premiums paid; minus
- any loans and loan interest, minus
- any Partial Withdrawals of the Net Cash Surrender Value.

If any Rider Insured commits suicide, while sane or insane, within two years after the Issue Date, the proceeds payable will be limited to the Cost of Insurance for that Insured.

If any Insured under this Policy commits suicide, while sane or insane, within two years from the effective date of:

- any increase in the Face Amount or
- additional insurance coverage provided by rider after the Issue Date,

the proceeds for such additional insurance will be limited to its cost.

### 2.9   Policy Termination

This Policy will terminate at the earliest of the following events:

- the day We receive Your written request to fully surrender this Policy;
- the end of the Grace Period for which we have not received premium due; or
- the date of death of the Insured.

See any supplementary benefits and riders for modifications of this provision that apply to them.

### 2.10  Policy Continuation after Expiry Date

If this Policy is in force on the Expiry Date, it will automatically continue in force until the death of the Insured, unless You notify Us in writing that You do not wish to continue the Policy. If this Policy is in the Grace Period on the Expiry Date and You would like the Policy to continue, You will need to pay the minimum amount required to remove this Policy from the Grace Period, as described under "Grace Period."

Coverage under this Policy after the Expiry Date will be subject to the following conditions:

- The Death Benefit will be determined as described under "Amount of Death Benefit" and "DEATH BENEFIT PAYMENT PROVISIONS."
- No Premium payments will be accepted and no Monthly Deductions will be taken.
- Interest will continue to be credited monthly to your Accumulated Value.
- No Partial Withdrawals will be allowed, but new Policy loans and Policy loan repayments will be accepted. Loan interest rates will apply as shown on the Coverage Description.

### 2.11 Basis of Computations

Any Cash Surrender Values and paid-up nonforfeiture benefits available under this Policy are not less than the minimum values required by law. We have filed with the insurance supervisory official of the jurisdiction in which this Policy is delivered a detailed statement of Our method of computing such values.

We base minimum Cash Surrender Values and maximum Cost of Insurance Rates on the 2001 CSO Age Nearest Birthday Ultimate Mortality Tables, gender distinct and smoker distinct. The Accumulation Value will be at least as large as if We had credited the guaranteed interest rate and charged the maximum Cost of Insurance rates and Expense Charges. The Surrender Charges will never be larger than those allowed under the Standard Nonforfeiture Law.

### 2.12 Reports to Owner

On each Policy Anniversary, We will send to your address on record with Us a report, free of charge, showing at least:

- the beginning date and ending date of the current report;
- all premiums paid and all expense and insurance charges made during the current report period;
- the interest credited during the current report period;
- the Accumulation Value as of the beginning date and end date of the current report; and
- the Cash Surrender Value, the Death Benefit, and the amount of outstanding Policy loans, all as of the ending date of the current report period.

If the Policy's Net Cash Surrender Value will not maintain the Policy in force until the next reporting period unless further payments are made, a notice to this effect will be included in the report.

Upon Your written request, We will provide an illustrative report annually without charge. We reserve the right to charge a fee for additional reports. The fee will not exceed $25.00.

## 3. OWNER AND BENEFICIARY PROVISIONS

### 3.1 Owner

The owner of this Policy is named in the application. As owner, You are entitled to exercise the rights of this Policy while the Insured is living. If the Policy is jointly owned, the exercise of rights must be made by the consent of both owners. If You designate an irrevocable Beneficiary or assign the Policy, Your ownership rights are limited.

If an owner other than the Insured dies while the Insured is living, all ownership rights will pass to that owner's estate or successor in interest (if the owner is a non-natural person) unless otherwise provided.

### 3.2 Beneficiary

The beneficiary(ies) is(are) as named in the application, unless later changed. The beneficiary(ies) is(are) entitled to the insurance benefits of this Policy. Unless You have designated otherwise in writing to Us, We will pay the insurance benefits to:

- the primary beneficiary(ies) who survive the Insured; or if none, then
- surviving contingent beneficiary(ies); or if none, then
- the owner or the owner's estate.

If any beneficiary dies within 60 calendar days after the Insured, and before payment of any proceeds, payments will be made as though the beneficiary had died before the Insured. The beneficiary designation, as included in the original application or as changed by a subsequent written request, may include provisions that replace these provisions. We are not responsible for any changes that do not achieve Your purpose or intent.

### 3.3 Changing Owner or Beneficiary

While the Insured is living and this Policy is in force, You may change the owner or beneficiary by sending Us a written notice, signed by You. The notice must have, as appropriate, the name of the new beneficiary or the name and notarized signature of the new owner. Provided the notice is received in good order and recorded at Our Administrative Office, any beneficiary change or ownership change will take effect as of the date You sign the notice of change, unless You specify another date, subject to any payments made or actions taken by Us prior to receipt of the notice. A new beneficiary designation revokes any prior designation.

Irrevocable beneficiaries can only be changed by the owner with the written authorization of the irrevocable beneficiary. We may restrict an ownership change to satisfy applicable laws or regulations.

### 3.4 Assignment

You may assign this Policy. We will not accept or be bound by an assignment unless We receive a written assignment that is signed and dated by You. After the assignment has been received in good order and recorded at Our Administrative Office, the assignment will take effect as of the date You signed the notice of assignment or other date You specify in writing, subject to any payments made or actions taken by us prior to receipt of the notice.

Your rights and those of any other person referred to in this Policy will be subject to the assignment. We assume no responsibility for the validity of an assignment. A collateral assignment will not change ownership. We will consider an absolute assignment as a change of ownership.

## 4. PREMIUM PROVISIONS

### 4.1 Minimum Monthly Premiums

The amount of Your Minimum Monthly Premium is shown in the Coverage Description. Your first Minimum Monthly Premium is due on the Issue Date. You may pay subsequent Minimum Monthly Premium in monthly, quarterly, semi-annual or annual payments.

Your Minimum Monthly Premium will be adjusted if Your Face Amount is changed or a rider or benefit is added, deleted, or increased.

We use the Minimum Monthly Premium as a basis for computing the Accumulated Minimum Monthly Premium. Payment of the Minimum Monthly Premium does not guarantee Your Policy will remain in force except as described under "No Lapse Guarantee."

### 4.2 Planned Periodic Premiums

The amount and frequency of Your Planned Periodic Premiums are shown in the Coverage Description. Premiums may be paid until attained age 120. Premiums, in addition to Your Planned Periodic Premium, may also be made but may be subject to tax limitations. See Applicable Tax Law section.

### 4.3 Flexible Premiums

Premium payments are flexible. You may choose the amount and frequency of Your premiums. The amount and timing of Your premiums may affect the Death Benefit, the Accumulation Value, and the duration of Your insurance coverage.

If a payment of any additional premium would increase the difference between the Accumulation Value and the Death Benefit, We reserve the right to reject the additional premium payment unless you submit satisfactory evidence of insurability and we agree to accept the risk.

### 4.4 Grace Period

Insurance coverage continues as long as the Insured is alive and the Net Cash Surrender Value is sufficient to cover the Monthly Deductions, as defined under "Monthly Deduction." If the Net Cash Surrender Value on any Monthly Anniversary is less than such deductions for the following month, We will send a written notice to You at Your last known address stating that a Grace Period of 61 days has begun, starting with the date the notice is mailed. The notice will also state the amount of Monthly Deductions due for the Grace Period plus the amount of the Premium payment or loan repayment sufficient to keep the Policy in force for at least three months from the start of the Grace Period.

If you do not remit the amount stated in the notice to Our Administrative Office before the end of the Grace Period, coverage will cease as of the due date. Payments sent by U.S. mail will be considered remitted as of the date they are postmarked. We will send a written notice to You at Your last known address stating that this Policy has terminated without value.

If the Insured dies during the Grace Period, we will pay the insurance benefits, as defined under "Death of Insured."

### 4.5  No Lapse Guarantee

Your Policy may have a No Lapse Guarantee.  Refer to the Coverage Description in Your Policy to determine if this feature is a part of Your Policy.

The No Lapse Guarantee provides that, as long as Your Adjusted Premium, on each Monthly Anniversary, is greater than or equal to the Accumulated Minimum Monthly Premium, Your Policy will not terminate before the No Lapse Guarantee Expiry Date shown in the Coverage Description, even if Your Net Cash Surrender Value is insufficient to cover the Monthly Deduction.

On the first Monthly Anniversary when the Adjusted Premium is less than the Accumulated Minimum Monthly Premium, We will send You a written notice stating the amount required to keep the No Lapse Guarantee in force. The amount will be:

- the Accumulated Minimum Monthly Premium; minus
- the Adjusted Premium; plus
- the Minimum Monthly Premium for the next month.

If this amount is not paid by the next Monthly Anniversary, the No Lapse Guarantee will terminate and cannot be reinstated.

If the No Lapse Guarantee has terminated Your Policy may enter the Grace Period. See the Grace Period section.

### 4.6  Reinstatement

If this Policy has ended without value for reasons other than surrender, prior to the Expiry Date shown in the Coverage Description, You may reinstate the Policy during the lifetime of the Insured, if You:

- submit an application for reinstatement within the Reinstatement Period shown on your Coverage Description pages;
- provide evidence, satisfactory to us, of insurability of the Insured;
- pay the Monthly Deductions for the Grace Period;
- pay premiums sufficient to keep the Policy in force for at least three months after the date of reinstatement;  and
- satisfy any other conditions required by a supplemental rider to this Policy.

The effective date of the reinstated Policy will be the Monthly Anniversary following the date We approve Your reinstatement application.  The new Accumulation Value will be equal to the Accumulation Value at time of lapse plus three months of charges less premium loads.  Any Policy loan, including loan interest, outstanding at the time of lapse will be reinstated for the same amount and with the same provisions as were in place at time of lapse.

## 5. POLICY VALUE PROVISIONS

### 5.1 Accumulation Value

On each Monthly Anniversary, We will calculate the Accumulation Value as:

- the Accumulation Value on the last Monthly Anniversary plus one month's interest; plus
- all Net Premiums received since the last Monthly Anniversary plus pro rata compound interest from the date a premium is received to the date the Accumulation Value is determined; minus
- the Monthly Deduction for the following month; minus
- any Partial Withdrawals taken since the last Monthly Anniversary .

On any day other than a Monthly Anniversary, the Accumulation Value will be equal to:

- the Accumulation Value on the last Monthly Anniversary plus pro rata compound interest from the last Monthly Anniversary to the date the Accumulation Value is determined; plus
- all Net Premiums received since the last Monthly Anniversary plus pro rata compound interest from the date a premium is received to the date the Accumulation Value is determined; minus
- any Partial Withdrawals taken since the last Monthly Anniversary.

### 5.2 Declared Rate(s)

We will credit interest on the initial Net Premium payment at the Declared Rate in effect on the day of its receipt for a period of 12 months. Thereafter We will credit interest at the Declared Rate(s) determined by Us. A Declared Rate will never be less than the Guaranteed Minimum Interest Rate shown in the Coverage Description. Any additional amounts credited will be credited no less frequently than annually, and will be nonforfeitable after crediting, except indirectly due to Surrender Charges.

The interest rate We credit on the portion of the Accumulation Value secured for a Policy loan may be lower than the Declared Rate, but will never be less than the Guaranteed Minimum Interest Rate shown in the Coverage Description.

### 5.3 Monthly Deduction

We will make a Monthly Deduction from the Accumulation Value at the conclusion of each Monthly Anniversary to cover administrative charges and to provide insurance coverage for the following month. The Monthly Deduction is comprised of:

- the Cost of Insurance for the Policy and any supplemental benefits or riders; plus
- the Expense Charges for the Policy and any supplemental benefits or riders.

### 5.4 Cost of Insurance

On any Monthly Anniversary, the monthly Cost of Insurance is the current monthly Cost of Insurance rate, multiplied by the Net Amount at Risk, divided by $1,000.

The current and guaranteed monthly Cost of Insurance rates are based on issue age, Policy duration, and Class of the Insured. The guaranteed rates are shown in the Table of Guaranteed Maximum Cost of Insurance Rates in the Coverage Description.

We may change the current monthly Cost of Insurance rates. We may not increase these rates above the Guaranteed Maximum Cost of Insurance rates. We will notify You, in advance, of any increase in the current rates.

Any change in Cost of Insurance rates will apply to all Insureds of the same issue age, Policy duration, or Class. No changes in Cost of Insurance rates will discriminate against any Insured for any reason, including changes in insurability.

## 5.5 Policy Loans

While this Policy is in force during the lifetime of the Insured, You may borrow money from Us on the sole security of this Policy. The maximum Policy loan amount is:

- the Net Cash Surrender Value of this Policy; minus
- the interest on the Policy loan to the next Policy Anniversary.

You may borrow all or part of the maximum Policy loan available. We will not postpone a Policy loan for more than six months after We receive the written Policy loan request. We will not postpone a Policy loan to be applied to the payment of premiums on any Policy with Us.

## 5.6 Loan Interest

We determine the interest rate on Your Policy loan at the time the loan is made and every 12 months thereafter. The loan interest rate will not exceed the greater of:

- the Declared Rate being credited at that time, plus 1%, or
- the Published Monthly Average for the calendar month ending two months before the beginning of month of Your Policy Anniversary.

Your Policy loan interest rate may be increased wherever an increase in the Published Monthly Average would increase Your Policy loan interest rate by 0.5% or more.

Your Policy loan interest rate will be reduced wherever a reduction in the Published Monthly Average would decrease Your Policy loan interest rate by 0.5% or more.

Interest will be charged on any Policy loan from the date of the Policy loan to the end of the Policy year. If the loan balance is not paid during the Policy year, a full year of interest at the Policy loan interest rate will be charged at the next Policy Anniversary. Any unpaid interest will be treated as part of the loan balance and will bear the same interest rate.

## 5.7 Loan Repayment

You may repay all or part of a Policy loan at any time while the Insured is alive and this Policy is in force. We will assume that any payment You make to Us while You have a Policy loan is a premium payment, unless You notify Us that it is a loan repayment. You may not apply automatic payments as loan repayments. Each loan repayment must be at least $25, with an exception for the final repayment.

Failure to repay a Policy loan or to pay loan interest will not terminate this Policy, unless the Net Cash Surrender Value is less than the Monthly Deduction due on a Monthly Anniversary, as described under "Grace Period."

A Policy loan may have a permanent effect on Your benefits under this Policy even if it is repaid. When interest is credited to the portion of the Accumulation Value secured for the loan, that interest is generally credited at a rate lower than the Declared Rate.

## 5.8 Policy Surrender

You may give up this Policy for its Net Cash Surrender Value, paid in a lump sum, at any time while the Insured is living. You may do this by sending Us a written request in good order, or by any other method approved by Us. We may require the return of this Policy. We will compute the Net Cash Surrender Value and Your request for surrender will be effective upon Our receipt of Your surrender request, or on such date as You may request, and all insurance coverage under this Policy will end.

On the date of surrender, the Net Cash Surrender Value will not be less than the Net Cash Surrender Value at the beginning of the day following the last Monthly Anniversary, adjusted for any partial withdrawals, policy loans or repayments, or premium payments made since the last Monthly Anniversary.

We reserve the right to defer payment of any Net Cash Surrender Value up to six months after We receive the surrender request.

## 5.9 Partial Withdrawals

Partial Withdrawals are permitted during the lifetime of the Insured. Anytime after the first Policy year, You may request a Partial Withdrawal of the Net Cash Surrender Value of this Policy in a lump sum.

The request must be made in writing and sent to Our Administrative Office. The Partial Withdrawal amount may not exceed:

- the Net Cash Surrender Value; minus
- the amount required to keep this Policy in force for 3 months.

We reserve the right to charge a Partial Withdrawal fee not exceeding $25.00.

We will not postpone payment for more than 6 months after We receive the Partial Withdrawal request. Nor will We postpone a Partial Withdrawal to be applied to the payment of premiums on policies with Us.

The Accumulation Value and the Death Benefit will be reduced by the amount of the Partial Withdrawal.

Such Partial Withdrawal and resulting reductions will take effect on the date We receive Your request at Our Administrative Office. We will send You a letter that reflects these changes.

We reserve the right to decline a request for a Partial Withdrawal of the Net Cash Surrender Value if:

- the Death Benefit would be reduced below the minimum amount required to issue the Policy on the date of such request; or
- We determine that the Partial Withdrawal would cause this Policy to fail to qualify as life insurance under applicable tax law, as described under "Applicable Tax Law."

### 5.10 Surrender Charges

We will subtract a Surrender Charge from Your Accumulation Value as shown in Your Table of Surrender Charges in the Coverage Description if:

- You surrender Your Policy for its Net Cash Surrender Value; or
- Your Policy terminates at the end of the Grace Period.

The Surrender Charge will be determined by:

- dividing the initial amount of coverage by $1,000; then
- multiplying the result by the applicable Surrender Charge per $1,000 of Initial Face Amount, as shown in the Table of Surrender Charges.

If the Surrender Charge is greater than the Accumulation Value, the Cash Surrender Value of the Policy will be zero.

The total Surrender Charge for the Policy is the sum of all coverage Surrender Charges in effect at the time of surrender.

### 5.11 Extended Insurance

You may continue this Policy as extended insurance by discontinuing the Planned Periodic Premiums and all other flexible premiums. Upon choosing this option, the amount and form of insurance will remain unchanged, unless You elect to decrease the coverage as described under "Decrease in Face Amount of Coverage."

Extended insurance coverage will continue until the Net Cash Surrender Value is insufficient to cover a Monthly Deduction. Your Policy will then enter the Grace Period, as described under "Grace Period."

While this Policy is continued in force as extended insurance, it may be surrendered for its Net Cash Surrender Value.

## 6. CHANGES IN INSURANCE COVERAGE

After the first Policy Anniversary and while Your Policy is in force, You may make the following changes to this Policy by sending Us a written request in a form satisfactory to Us.

We reserve the right to refuse to make any change that We determine would cause this Policy to become a MEC (unless You have specified otherwise in writing) or to fail to qualify as life insurance under applicable tax law, as described under "Applicable Tax Law." We will send You an endorsement to Your Policy reflecting each change and its effect on any Policy features.

### 6.1   Increase in Face Amount

An increase in the Face Amount must be submitted in a new application prior to the Insured's Attained Age 80. The requested increase must be at least $10,000. We may require evidence of insurability satisfactory to Us. The effective date of the increase will be the Monthly Anniversary following the date We approve the application. A new monthly Expense Charge, a new Surrender Charge, and a new surrender charge period will apply.

### 6.2   Decrease in Face Amount

A decrease in the Face Amount will be effective on the Monthly Anniversary following the date on which We receive your request in good order. You may not decrease the Face Amount by more than 50% of the Face Amount on the Issue Date or below the minimum amount listed under the "The Face Amount of this Policy may not be reduced below" in the Coverage Descripton. A decrease in Face Amount could impact Policy riders and supplemental benefits. Please refer to your Policy riders.

### 6.3   Change in Death Benefit Option

A change from one of the Death Benefit options described under "Amount of Death Benefit" to another will take effect on the Monthly Anniversary following the date on which We receive the request. No evidence of insurability will be required. No Surrender Charge will apply to a change in Death Benefit option.

If You ask Us to change from Option A to Option B, We will decrease the Face Amount by the amount of Your Accumulation Value on the effective date of change. We reserve the right to decline to make such change if it would reduce the Face Amount below the minimum amount required to issue the Policy on the date of such change.

If You ask Us to change from Option B to Option A, We will increase the Face Amount by the amount of Your Accumulation Value on the effective date of change.

If You ask Us to change from Option C to Option A, We will increase the Face Amount by an amount equal to, as of the effective date of the change:

- the sum of the Premiums paid; minus
- the sum of any net withdrawals taken.

If this amount is negative, the Face Amount will not be decreased. The Face Amount will not be increased above the amount shown in the Coverage Description as the "Option C Death Benefit Limit."

If You ask Us to change from Option C to Option B, We will adjust the Face Amount by an amount equal to, as of the effective date of the change:

- the adjustment to the Face Amount for a change from Option C to Option A; minus
- the amount of your Accumulation Value.

Changes to Option C from either Option A or Option B are not permitted.

### 6.4 Reclassification

If the Insured has had a change in nicotine status or a change in health that could affect the Insured's underwriting classification, You can change the Insured's Class, provided that You send us an application in good order and the requested change is in accordance with our underwriting standards in effect at the time of application. Any new risk class will be a risk class We determine but will not be less favorable than the requesting Insured's current Class. The reclassification will be effective on the Monthly Anniversary Day next following the date We approve Your application, unless another date acceptable to Us is requested.

## 7. INSURANCE COVERAGE PROVISIONS

### 7.1 Death of Insured

We will pay the insurance benefits of this Policy to the beneficiary(ies) after we receive, at our Administrative Office:

- proof that the Insured died while this Policy was in force; and
- documentation acceptable to us to establish the right of the claimant to the Policy proceeds .

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

- the Death Benefit, as defined under "Amount of Death Benefit"; plus
- any other benefits then due from riders to this Policy; minus
- any Policy loan and Policy loan interest on the Policy; minus
- any overdue deductions if the Insured died during the Grace Period.

We will pay Interest on the resulting amount from the date we receive due proof of death, until the funds are released, at the rate not less than the rate required by law.

Additional interest shall accrue at a rate of 10% annually beginning with the date 31 calendar days from the latest of (i), (ii), and (iii) and ending on the date the claim is paid, where:

(i) is the date We received, at Our Administrative Office, sufficient proof that the Insured died when this Policy was in force;

(ii) is the date We receive sufficient information to determine Our liability, the extent of the liability, and the appropriate Payee legally entitled to the proceeds, and;

(iii) is the date that legal impediments to payment of proceeds that depend upon actions of parties other than Us are resolved and sufficient evidence of the same is provided to Us. Legal impediments to the payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators; and (c) the submission of information required to satisfy state and federal reporting requirements.

If the Insured dies during a period for which a Monthly Deduction has been made, We will add to the proceeds a refund of any portion of the Monthly Deduction actually charged for any period beyond the date of death of the Insured.

Payment choices, or any later changes, will take effect when notice is received and recorded, and will control payments made after that time. To the extent permitted by law, amounts applied under any payments made will not be subject to the claims of creditors or to legal process.

Payment of these benefits may also be affected as described under "Incontestability," "Misstatement of Age and/or Gender," "Suicide Exclusion," and "Grace Period." Special exclusions or limitations (if any) are listed in the Coverage Description.

## 7.2   Amount of Death Benefit

If the Insured dies while the Policy is in force, this Policy will provide a Death Benefit. The Death Benefit will be determined under Option A, Option B, or Option C, below, whichever You have chosen and is in effect at such time.

Under Option A, the Death Benefit is the greater of:

- the Face Amount on the date of death; or
- the applicable percentage of the Accumulation Value on the date of death shown in the Table of Applicable Percentages in the Coverage Description.

Under this option, the amount of the death benefit is fixed, except when it is determined by such a percentage.
Under Option B, the Death Benefit is the greater of:

- the Face Amount plus the amount of Your Accumulation Value on the date of death; or
- the applicable percentage of the Accumulation Value on the date of death shown in the Table of Applicable Percentages in the Coverage Description.

Under this option the amount of Death Benefit may vary.  The applicable percentage depends upon the Attained Age of the Insured at the beginning of the Policy year (see Table of Applicable Percentages in the Coverage Description.)

Under Option C the Death Benefit is the greater of:

- the Face Amount plus the sum of the Premiums paid minus the sum of any net withdrawals taken, provided that such result is no less than the Face Amount and no greater than the amount shown in the Coverage Description as the "Option C Death Benefit Limit"; or
- the applicable percentage of the Accumulation Value on the date of death shown in the Table of Applicable Percentages in the Coverage Description.

## 8. DEATH BENEFIT PAYMENT PROVISIONS

### 8.1 Methods of Payment

We will pay the insurance benefits payable on the death of the Insured in a lump sum, unless You choose the Alternate Option, described below, as Your method of payment.

If no method of payment is on file with Us when the Insured dies, the Beneficiary will have the right to choose a method of payment. If, however, You have selected a method of payment and notified Us of Your selection before the death of the Insured, the Beneficiary cannot change Your selection after the Insured dies.

We may require that the Payee under the Alternate Option be a natural person. We may require proof of the Payee's Attained Age if the amount or duration of payments is affected. Selection of the Alternate Option will also be subject to Our rules in effect at the time of selection.

Such rules include the minimum amount to be applied under the Alternate Option and the minimum amount for each payment.

### 8.2 Alternate Option

The Death Benefit may be paid in equal installments for a fixed period of up to 30 years. We show the minimum amount of monthly installments for each $1,000 of death benefit in the Table of Monthly Payments Under Alternate Option per $1,000 of Proceeds.

Under the Alternate Option the annuity benefits at the time of their commencement will not be less than those that would be provided by the application of the Cash Surrender Value to purchase a single consideration immediate annuity contract at purchase rates offered by Us at the time to the same class of annuitants.

## TABLE OF MONTHLY PAYMENTS UNDER ALTERNATE OPTION
## PER $1,000 OF PROCEEDS

Alternate Option Payments for a Fixed Period

| Years | Amount | Years | Amount | Years | Amount |
|-------|--------|-------|--------|-------|--------|
| 1 | 83.72 | 11 | 8.00 | 21 | 4.40 |
| 2 | 42.07 | 12 | 7.37 | 22 | 4.22 |
| 3 | 28.18 | 13 | 6.83 | 23 | 4.05 |
| 4 | 21.24 | 14 | 6.38 | 24 | 3.90 |
| 5 | 17.08 | 15 | 5.98 | 25 | 3.77 |
| 6 | 14.30 | 16 | 5.63 | 26 | 3.64 |
| 7 | 12.32 | 17 | 5.33 | 27 | 3.52 |
| 8 | 10.83 | 18 | 5.06 | 28 | 3.41 |
| 9 | 9.68 | 19 | 4.81 | 29 | 3.31 |
| 10 | 8.75 | 20 | 4.60 | 30 | 3.21 |

# CHRONIC ILLNESS RIDER – ACCELERATED DEATH BENEFIT

This Chronic Illness Rider (the "Rider") is a part of the Policy to which it is attached. It becomes effective on the date coverage becomes effective on this Policy and ceases to be effective on Rider's Expiry Date as shown in the Policy's Coverage Description. In the event of a conflict with any provision in this Policy, the terms in this Rider control. There is no cost for this Rider, and it provides no additional cash values or loan values.

---

**The benefits payable under this Rider are intended to qualify as accelerated death benefits under section 101(g) of the Internal Revenue Code of 1986, as amended ("the Code"). These benefits are not intended to qualify as long-term care insurance under section 7702B of the Code.**

**The receipt of an accelerated death benefit may be taxable to You, if the benefit does not satisfy all qualification requirements under the Code or to the extent it exceeds the maximum per diem limit under section 101(g) of the Code.**

**If You are paid a benefit under this Rider, Your Policy's Death Benefit, Cash Surrender Value, and available loan value will be reduced. In addition, You may lose Your right to receive certain public funds such as Medicare, Medicaid, Social Security, Supplemental Security Income (SSI), and possibly others.**

**YOU SHOULD CONSULT YOUR PERSONAL TAX OR LEGAL ADVISOR BEFORE CLAIMING FOR A BENEFIT UNDER THIS RIDER.**

---

**Definitions** – All terms in this Rider have the same meaning as in the Policy, including the terms "You" and "Your" which refer to the Owner of the Policy. In addition, several terms, specific to this Rider, are defined as follows:

**Accelerated Death Benefit** – the amount of Death Benefit paid in advance of the death of the Insured, pursuant to the terms of this Rider. Any amount of Death Benefit requested for acceleration, but not yet paid, is allocated to the Remaining Death Benefit.

**Activities of Daily Living** – any of the following activities:

- Bathing: The ability of the Insured to wash himself or herself either in the tub or shower or by sponge bath, including the task of getting into or out of a tub or shower.
- Continence: The ability of the Insured to control bowel and bladder functions; or in the event of incontinence, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).
- Dressing: The ability of the Insured to put on and take off all items of clothing, and necessary braces, fasteners, or artificial limbs.
- Eating: The ability of the Insured to feed himself or herself by getting food and drink from a receptacle (such as a plate, cup, or table) into the body.
- Toileting: The ability of the Insured to get to and from the toilet, get on and off the toilet, and perform associated personal hygiene.
- Transferring: The ability of the Insured to move in and out of a chair, bed, or wheelchair.

**Chronically Ill Person** – a person who, during the prior 12-month period, has been certified by a Licensed Health Care Practitioner as

- being permanently unable to perform (without Substantial Assistance from another person) at least two Activities of Daily Living due to a loss of functional capacity; or
- requiring Substantial Supervision to protect himself or herself from threats to health and safety due to Severe Cognitive Impairment.

**Licensed Health Care Practitioner** – any Licensed Physician, registered professional nurse, or licensed social worker. May not be the Owner, the Insured, or a family member of either the Owner or the Insured.

**Licensed Physician** – a doctor of medicine or osteopathy (as defined in section 1861(r)(1) of the Social Security Act), residing and practicing in the United States, legally authorized to practice medicine and surgery by the state in which he or she performs such function or action and who is acting within scope of his or her license when he or she performs such functions. May not be the Owner, the Insured, or a family member of either the Owner or the Insured.

**Qualifying Event** – the certification, as described in this Rider, that the Insured is a Chronically Ill Person and has a written plan of care prescribed by a Licensed Health Care Practitioner setting forth the qualifying services required by the Insured. For this purpose, qualifying services mean the necessary diagnostic, preventative, therapeutic, curing, treating, mitigating and rehabilitative services required because the Insured is a Chronically Ill Person.

Qualifying services include personal care services, which consist of any care with the primary purpose of providing needed assistance with any of the disabilities as a result of which the Insured is a Chronically Ill Person.

**Remaining Death Benefit** – an amount equal to the Death Benefit of Your Policy immediately before acceleration reduced by the amount of any lien secured in Our favor against the Policy and the amount of any Policy loan or other indebtedness.

**Severe Cognitive Impairment** – a loss or deterioration in the intellectual capacity that is:

- comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia; and
- measured by clinical evidence and standardized tests that reliably measure impairment in the Insured's
  (a) short-term or long-term memory,
  (b) orientation as to people, places, or time, and
  (c) deductive or abstract reasoning.

**Substantial Assistance** – either of the following forms of assistance:

- "Hands-on" assistance – the physical assistance of another person without which the Insured would be unable to perform the Activities of Daily Living; or
- "Standby assistance" – the physical presence of another person within arm's reach of the Insured that is necessary to prevent, by physical intervention, injury to the Insured while the Insured is performing the Activities of Daily Living.

**Substantial Supervision** – continual supervision (which may include cuing by verbal prompting, gestures, or other demonstrations) by another person that is necessary to protect the Insured from threats to his or her health or safety.

## Rider Benefits

We will pay an Accelerated Death Benefit, at the time of a Qualifying Event, as described in this Rider.

Exercising this Rider will preclude You from exercising the Terminal Illness Rider attached to this Policy. After acceleration, the Death Benefit of Your Policy will be the greater of the Remaining Death Benefit and $5,000.

If the Insured dies after You elect to receive Accelerated Death Benefits, but before any such benefits are paid, the election will be cancelled and the Death Benefit paid pursuant to the Policy. If the Insured dies after payments have commenced but before all payments have been made, We will pay the beneficiary the Remaining Death Benefit.

## Claiming an Accelerated Death Benefit

There is no waiting period for this benefit. To submit a claim for an Accelerated Death Benefit, You must notify Us in writing, while the Insured is living and the Policy and Rider are in force, of Your intention to seek an Accelerated Death Benefit. Within 15 days of receiving Your notice, We will provide You with any forms You will need to complete Your claim and any additional information We require.

You must return the completed form(s) to Us along with evidence, satisfactory to Us, that all of the conditions for eligibility are met. Such evidence must include:

- certification by a Licensed Health Care Practitioner that the Insured is a Chronically Ill Person, as described in this Rider, and
- authorization from the Insured to obtain copies of any medical records that We may require.

If We do not furnish the claims forms within 15 days, it will be sufficient for You to provide written proof that the Insured satisfies all of the conditions for eligibility as described in this Rider, which includes certification by a Licensed Health Care Practitioner that the Insured is a Chronically Ill Person.

## Exceptions to Eligibility

You will not be eligible to receive an Accelerated Death Benefit if:

- You are required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- You are required by a government agency to use this benefit to qualify for, obtain, or keep a government benefit or entitlement; or
- the Insured is a Chronically Ill Person as a result of intentional self-inflicted injuries within 2 years of the Issue Date.

## Amount of Accelerated Death Benefit

You can choose to accelerate up to 50% of the Death Benefit up to a maximum of $500,000.

No surrender charge will apply when You receive an Accelerated Death Benefit.

You may request that payments be made monthly or in a lump sum. The first payment is made on the next Monthly Anniversary following receipt of Your request for acceleration in good order, referred to as the "commencement date. Regardless of when the payment is actually made, each Accelerated Death Benefit payment relates back to the most recent 12-month period for which the Insured was certified as being chronically ill.

Your Accelerated Death Benefit payments are limited to the per diem limit which is set for each calendar year by the Internal Revenue Service. The "monthly limit" is the per diem limit multiplied by the number of days in the Policy month. The "annual limit" is the per diem limit multiplied by the number of days in the 12-month period following the commencement date.

If You request monthly payments, the following conditions apply:

- Payments cannot last longer than 10 years from the commencement date.
- Payments will continue until the acceleration amount is exhausted or the Remaining Death Benefit of $5,000 is reached.
- The monthly payments shall not exceed the monthly limit. Therefore, Your monthly payment may fluctuate based on the number of days in the month or due to a change in the per diem limit being set for that calendar year.

If You request a lump sum payment, the following conditions apply:

- If the requested amount is equal to or less than the annual limit, a single lump sum payment will be made. The amount payable shall be at least equal to the percentage of Death Benefit being accelerated multiplied by the difference between the current Accumulation Value and any outstanding Policy loans.
- If the requested amount is greater than the annual limit, annual lump sum payments will be made every 12 month starting from the commencement date. The annual lump sum payment will be the least of the annual limit, the remaining acceleration amount, or the Remaining Death Benefit.
- Annual lump sum payments will continue until the acceleration amount is exhausted or the Remaining Death Benefit of $5,000 is reached.
- Requests for single lump sum payments that exceed the annual limit will be permitted if specifically acknowledged by You in writing.

For monthly or annual lump sum payments, the Insured must be re-certified as being Chronically Ill every 12 months. Such re-certification must be made prior to the expiry of the last certification. At time of Re-certification, Accelerated Death Benefit payments based in the Internal Revenue Service per diem limits will be updated to reflect these new limits. If the Insured is not re-certified within such time period, Accelerated Death Benefit payments will cease. No payments resume even if a re-certification is made in the future. Any remaining Accelerated Death Benefit will be paid as part of the Remaining Death Benefit.

**Payment of the Accelerated Death Benefit**

Upon receipt of due proof of eligibility as described under "Claiming an Accelerated Death Benefit," We will pay the Accelerated Death Benefit to You or Your estate (unless You have designated otherwise), provided that

- the Insured is living and this Policy and Rider are in force on the date We received all documentation necessary to pay Your claim, and
- all irrevocable beneficiaries and assignees have, in writing, approved payment of the Accelerated Death Benefit.

We may, at Our expense, require certification by a Licensed Health Care Practitioner of Our choice. If there is a difference of opinion regarding the Insured's eligibility for benefits, We may seek, at Our expense, a third medical opinion of a Licensed Health Care Practitioner that is mutually acceptable to the Insured and Us.

**Lien Against Death Benefit**

The Accelerated Death Benefit will be secured by a lien in Our favor against the Death Benefit. This lien has priority over any other person's interest in the Death Benefit, including the beneficiary's interest.  We will charge interest on the lien. Such interest will be added to the lien balance. The lien interest rate will be set at the time of acceleration. The lien interest rate will be the greater of:

- The current yield on 90 day treasury bills; or
- The current maximum statutory adjustable Policy loan rate based on the Published Monthly Average for the calendar month that ends two months before the date You submit a claim for an Accelerated Death Benefit payment.

When Your Remaining Death Benefit is equal to $5,000, interest charged on the lien will cease and no lien repayments will be accepted.  In no event will the lien interest rate accrued on the portion of the lien that is equal in amount to the Cash Surrender Value of the Policy at the time of acceleration be more than the Policy loan interest rate stated in the Policy.

We reserve the right to include in the lien any due and unpaid monthly deductions.

**Effect on Policy Values**

Prior to paying an Accelerated Death Benefit, We will provide You, and any irrevocable beneficiary and any assignee, with a statement demonstrating the effect of acceleration on Your Death Benefit, Accumulation Value, Cash Surrender Value, and any Policy loans. Upon payment of an Accelerated Death Benefit, We will send You an endorsement reflecting these Policy values as of the effective date of the acceleration.

The Accelerated Death Benefit will first be applied to repay any outstanding Policy loan and accrued Policy loan interest.

Any Partial Withdrawal, surrender, or Policy loan taken after We pay the Accelerated Death Benefit will be limited to the excess of the Net Cash Surrender Value over the lien.

Future Premiums, Cost of Insurance charges, and Expense Charges on this Policy will not be affected by the payment of an Accelerated Death Benefit.

When Your Remaining Death Benefit is equal to $5,000, We will stop paying the Accelerated Death Benefit.  At that time,

- Monthly Deductions and Policy loan interest charges will cease;
- no additional Premium payments or loan repayments will be accepted; and
- no new Partial Withdrawals or loans will be available.

Payment of an Accelerated Death Benefit will not impact any active riders or benefits of the Policy in effect at the time such payment is made.

**Termination**

This Rider terminates under the following conditions:

- Upon Your written request
- Upon termination of the Policy

Termination of the Rider will not affect any claim for an Accelerated Death Benefit made while the Rider was in effect.

**Incontestability**

This Rider will be incontestable under the same terms as this Policy.

**Reinstatement**

If this Policy and Rider have terminated, You may reinstate this Rider as a part of, and under the same terms as, the reinstatement of this Policy.

Symetra Life Insurance Company

Jacqueline M. Veneziani
Secretary

**TERMINAL ILLNESS RIDER –**
**ACCELERATED DEATH BENEFIT**

This Terminal Illness Rider (the "Rider") is a part of the Policy to which it is attached. It becomes effective on the date coverage becomes effective on this Policy and ceases to be effective on Rider's Expiry Date as shown in the Policy's Coverage Description. In the event of a conflict with any provision in this Policy, the terms in this Rider control. There is no cost for this Rider, and it provides no additional cash values or loan values.

---

The benefits payable under this Rider are intended to qualify as accelerated death benefits under section 101(g) of the Internal Revenue Code of 1986, as amended ("the Code"). These benefits are not intended to qualify as long-term care insurance under section 7702B of the Code.

The receipt of an accelerated death benefit may be taxable to You, if the benefit does not satisfy all qualification requirements under section 101(g) of the Code.

If You are paid a benefit under this Rider, Your Policy's Death Benefit, Cash Surrender Value, and available loan value will be reduced. In addition, You may lose Your right to receive certain public funds such as Medicare, Medicaid, Social Security, Supplemental Security Income (SSI), and possibly others.

YOU SHOULD CONSULT YOUR PERSONAL TAX OR LEGAL ADVISOR BEFORE CLAIMING FOR A BENEFIT UNDER THIS RIDER.

---

**Definitions** – All terms in this Rider have the same meaning as in the Policy, including the terms "You" and "Your" which refer to the Owner of the Policy. In addition, several terms, specific to this Rider, are defined as follows:

**Accelerated Death Benefit** – the amount of Death Benefit paid in advance of the death of the Insured, pursuant to the terms of this Rider. Any amount of Death Benefit requested for acceleration, but not yet paid, is allocated to the Remaining Death Benefit.

**Licensed Physician** – a doctor of medicine or osteopathy (as defined in section 1861(r)(1)) of the Social Security Act), residing and practicing in the United States, legally authorized to practice medicine and surgery by the state in which he or she performs such function or action and who is acting within scope of his or her license when performing such functions. May not be the Owner, the Insured, or a family member of either the Owner or the Insured.

**Qualifying Event** – the certification, as described in this Rider, that the Insured is a Terminally Ill Person.

**Remaining Death Benefit** – an amount equal to the Death Benefit of Your Policy immediately before acceleration reduced by the Accelerated Death Benefit paid.

**Terminally Ill Person** – a person who has been certified by Licensed Physician as having an illness or a physical condition which can reasonably be expected to result in death within 12 months after the date of certification.

### Rider Benefits

We will pay an Accelerated Death Benefit, at the time of a Qualifying Event, as described in this Rider.

Only one claim for acceleration can be made under this Rider. Exercising this Rider will preclude You from exercising any additional accelerated death benefit riders attached to this Policy. After acceleration, the Death Benefit of Your Policy will be the Remaining Death Benefit.

If the Insured dies after You elect to receive Accelerated Death Benefits, but before any such benefits are paid, the election shall be cancelled and the Death Benefit paid pursuant to the Policy.

### Claiming an Accelerated Death Benefit

There is no waiting period for this benefit. To submit a claim for an Accelerated Death Benefit, You must notify Us in writing, while the Insured is living and the Policy and Rider are in force, of Your intention to seek an Accelerated Death Benefit. Within 15 days of receiving Your notice, We will provide You with any forms You will need to complete Your claim and any additional information We require.

You must return the completed form(s) to Us along with evidence, satisfactory to Us, that all of the conditions for eligibility are met. Such evidence must include:

- certification by a Licensed Physician that the Insured is a Terminally Ill Person , as described in this Rider, and
- authorization from the Insured to obtain copies of any medical records that We may require.

If We do not furnish the claims forms within 15 days, it will be sufficient for You to provide written proof that the Insured satisfies all of the conditions for eligibility as described in this Rider.

## Exceptions to Eligibility

You will not be eligible to receive an Accelerated Death Benefit if:

- You are required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- You are required by a government agency to use this benefit to qualify for, obtain, or keep a government benefit or entitlement; or
- the Insured is a Terminally Ill Person as a result of intentional self-inflicted injuries within 2 years of the Issue Date.

## Amount of Accelerated Death Benefit

You can choose to accelerate up to 75% of the Death Benefit up to a maximum of $500,000. The Accelerated Benefit Death payment is this amount, discounted by one year of interest guaranteed not to exceed the Loan Interest described in the Policy to which this Rider is attached.

The Accelerated Death Benefit will be payable in a lump sum at least equal to the percentage of the Death Benefit being accelerated multiplied by the difference between the current Accumulation Value and any outstanding Policy loans. No surrender charge will apply when You receive an Accelerated Death Benefit.

## Payment of the Accelerated Death Benefit

Upon receipt of due proof of eligibility as described under "Claiming an Accelerated Death Benefit," We will immediately pay the Accelerated Death Benefit in a lump sum to You or Your estate (unless You have designated otherwise), provided that

- the Insured is living and this Policy and Rider are in force on the date We received all documentation necessary to pay Your claim, and
- all irrevocable beneficiaries and assignees have, in writing, approved payment of the Accelerated Death Benefit.

We may, at Our expense, require certification by a Licensed Physician of Our choice. If there is a difference of opinion regarding the Insured's eligibility for benefits, We may seek, at Our expense, a third medical opinion of a Licensed Physician that is mutually acceptable to the Insured and Us.

## Impact on Your Death Benefit

The Accelerated Death Benefit will reduce Your Death Benefit dollar for dollar.

## Effect on Policy Values

Prior to paying an Accelerated Death Benefit, We will provide You, and any irrevocable beneficiary and any assignee, with a statement demonstrating the effect of acceleration on Your Death Benefit, Accumulation Value, Cash Surrender Value, and any Policy loans. Upon payment of an Accelerated Death Benefit, We will send You an endorsement reflecting these Policy values as of the effective date of the acceleration.

The Accelerated Death Benefit will first be applied to repay any outstanding Policy loan and accrued Policy loan interest.

After We pay the Accelerated Death Benefit, any withdrawal, surrender, or Policy loan will be limited to the Net Cash Surrender Value.

Future Premuims, Cost of Insurance charges, and Expense Charges on this Policy will be proportionally reduced by the payment of an Accelerated Death Benefit.

Payment of an Accelerated Death Benefit will not impact any active riders or benefits of the Policy in effect at the time such payment is made.

## Termination

This Rider terminates under the following conditions:

- Upon Your written request
- Upon termination of the Policy

Termination of this Rider will not affect any claim for an Accelerated Death Benefit made while the Rider was in effect.

## Incontestability

This Rider will be incontestable under the same terms as this Policy.

## Reinstatement

If this Policy and Rider have terminated, You may reinstate this Rider as a part of, and under the same terms as, the reinstatement of this Policy.

Symetra Life Insurance Company

*Jacqueline M. Veneziani*

Jacqueline M. Veneziani
Secretary



**Symetra Life Insurance Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Phone 1-800-796-3872 | TTY/TDD 1-800-833-6388
Mailing Address: PO Box 34690 | Seattle, WA 98124-1690

# LAPSE PROTECTION BENEFIT RIDER

**The Lapse Protection Benefit Rider (the "LPB Rider") provides that, during the Lapse Protection Benefit Period (defined below), Your Policy will not enter into the Grace Period, even if the Net Cash Surrender Value is insufficient to pay the Monthly Deduction. When you purchase this LPB Rider, it becomes a part of Your Policy and amends Your Policy as indicated below. Unless specifically defined in this LPB Rider, all capitalized terms have the same meaning as in Your Policy. While this LPB Rider is part of Your Policy, You may not elect any other supplemental riders after the Policy is issued. In the event of a conflict with any provision in the Policy, the terms in this LPB Rider control.**

## 1.  DEFINITIONS

The LPB Rider adds the following terms to Your Policy:

**Benefit Rider Charge**: A charge taken from the Accumulation Fund of Your Policy as consideration paid for the Lapse Protection Benefit.

**Lapse Protection Administrative Charge**: A notional charge, by which we reduce the Lapse Protection Value, as shown on the Coverage Description.

**Lapse Protection Benefit**: The benefit provided by Section 3.2 of this LPB Rider.

**Lapse Protection Benefit Period**: Any period when the Lapse Protection Value is greater than or equal to zero and the Cash Surrender Value of Your Policy is greater than all outstanding Policy Loans and Loan Interest, as described more fully under Section 3 of this LPB Rider.

**Lapse Protection Cost of Insurance ("COI") Charge:** A notional charge, by which we reduce the Lapse Protection Value, calculated in the same manner as the Cost of Insurance charge under Your Policy with the following exceptions:

   (a)  The Lapse Protection Value replaces the Accumulation Fund in the net amount at risk calculation.

   (b)  The Lapse Protection COI Charge has a two-tier rate structure, as shown on the Coverage Description, with the first tier COI rates applying up to and including the Lapse Protection Net Amount at Risk Threshold, shown on the Coverage Description, and second tier (higher) COI rates applying on net amounts at risk above that threshold.

**Lapse Protection Face Amount Charge:** A notional charge, by which we reduce the Lapse Protection Value, as shown on the Coverage Description.

**Lapse Protection Funding Level Charge:** A notional charge deducted from the Lapse Protection Value on any Monthly Anniversary after the first Policy Anniversary on which the Lapse Protection Funding Level Test, as described more fully under Section 4 of this LPB Rider, is failed.

**Lapse Protection Interest Rates:** The two-tiered notional rates of interest credited to the Lapse Protection Value after all Lapse Protection Monthly Deductions and any reduction in the Lapse Protection Value due to a decrease in Face Amount have been assessed, with the first tier rate being credited on Lapse Protection Value up to and including the Lapse Protection Threshold shown on the Coverage Description and the second tier rate being credited on all Lapse Protection Value above the Lapse Protection Threshold.

**Lapse Protection Monthly Deduction:** The sum of the following notional charges by which We reduce the Lapse Protection Value on each Monthly Anniversary: Lapse Protection Cost of Insurance Charge, Lapse Protection Face Amount Charge, Lapse Protection Administrative Charge, Lapse Protection Funding Level Charge, and charges for any other supplemental riders.

**Lapse Protection Net Premium**: A notional amount We use to calculate the Lapse Protection Account Value, equal in value to the product of (a) multiplied by (b), where:

- (a) is a premium received under Your Policy, and
- (b) is the Lapse Protection Premium Factor shown in the Coverage Description.

**Lapse Protection Value**: A notional amount We use as a reference to determine when Your Policy is in a Lapse Protection Benefit Period under this LPB Rider, as described more fully under Section 3.2 of this LPB Rider.

## 2.   GENERAL PROVISIONS

### 2.1  Policy Provisions

The third paragraph of the "Grace Period" provision is replaced with the following: "Coverage will not cease due to insufficient Net Cash Surrender Value during a Lapse Protection Benefit Period, as described more fully under this LPB Rider."

The second sentence under "Planned Periodic Premiums" is deleted.

The "No-Lapse Guarantee" provision and the "Minimum Monthly Premiums" provision are deleted.

### 2.2  Policy Values

The Lapse Protection Benefit has no cash surrender or loan value associated with it.  You cannot withdraw or otherwise access any part of the Lapse Protection Value or use it as collateral for a Policy Loan.

### 2.3  Termination

This LPB Rider and the Lapse Protection Benefit it provides terminate on the earliest of the following events:

- The date We receive Your request to surrender Your Policy for its Net Cash Surrender Value.
- The date We receive Your request to terminate the LPB Rider.
- The date when Your Policy lapses.
- The date when the Face Amount of Your Policy increases at Your request.
- The date of death of the Primary Insured.
- The date you change Your Death Benefit to Option B.

After the LPB Rider terminates, We will no longer assess the Benefit Rider Charge.  We will not refund the Benefit Rider Charges We already assessed on Your Policy.

### 2.4  Reinstatement

If Your Policy terminates and You reinstate it, You may not reinstate this LPB Rider or the Lapse Protection Benefit. If Your Policy terminates, We will not refund the Benefit Rider Charges We assessed under Your Policy.

## 3.   LAPSE PROTECTION BENEFIT PROVISIONS

### 3.1  Lapse Protection Value

The Lapse Protection Value is based on charges and credits similar to those assessed on Your Policy, but it has no monetary value and cannot be withdrawn, loaned, or surrendered. We calculate the Lapse Protection Value in the same manner as the Accumulation Fund under Your Policy with the following exceptions:

- The Lapse Protection Net Premium replaces the Net Premium.
- The Lapse Protection Monthly Deduction replaces the Monthly Deduction.
- The Lapse Protection Interest Rates replace the Interest Rate We use to credit monthly interest on the Accumulation Fund.
- A Lapse Protection Funding Level Charge may apply, as described more fully under Section 4.2 of this LPB Rider.
- A decrease in Face Amount proportionally reduces the Lapse Protection Value, replacing the pro-rata Surrender Charge.
- Policy Loans are treated as withdrawals from the Lapse Protection Value, and repayments of Policy Loans and Loan Interest are added to the Lapse Protection Value.

## 3.2 Lapse Protection Benefit

The Lapse Protection Benefit prevents your Policy from entering into the Grace Period during any Lapse Protection Benefit Period. On each Monthly Anniversary, We determine your Lapse Protection Value. If Your Lapse Protection Value is greater than or equal to zero and the Cash Surrender Value of Your Policy is greater than the sum of all outstanding Policy Loans and Loan interest, Your Policy will be in a Lapse Protection Benefit Period. While in a Lapse Protection Benefit Period, Your Policy will not enter the Grace Period even if Your Net Cash Surrender Value is insufficient to pay Your Monthly Deduction.

## 3.3  Premium Required to Keep Your Policy in Force

If Your Net Lapse Protection Value is less than zero or if the Cash Surrender Value of Your Policy is less than or equal to the sum of all outstanding Policy Loans and Loan Interest, Your Policy will not be in a Lapse Protection Benefit Period and no Lapse Protection Benefit will be available. On the first Monthly Anniversary when Your Net Cash Surrender Value is insufficient to pay Your Monthly Deduction while Your Policy is not in a Lapse Protection Benefit Period, the Grace Period under Your Policy will begin and We will send you a written notice stating the amount of Premium or Policy Loan repayment required to keep Your Policy, and all supplemental riders including this LPB Rider, in force for three months. If You do not remit the required amount by the end of the Grace Period, Your Policy, and all supplemental riders including this LPB Rider, will lapse.

## 3.4  Benefit Rider Charge

Under this LPB Rider, the Benefit Rider Charge shown in the Schedule of Benefit Rider Charges on the Coverage Description is an actual, dollar amount charge added to the Monthly Deduction under Your Policy on each Monthly Anniversary while your Policy is in a Lapse Protection Benefit Period as described in 3.2 of this LPB Rider. If the LPB Rider terminates as described in Section 2.3 of this LPB Rider, the Benefit Rider Charge is removed from the Monthly Deduction on the next Monthly Anniversary. The Benefit Rider Charge is based on a percentage of the Face Amount of Your Policy and any supplemental riders. A decrease in the Face Amount of Your Policy and any supplemental riders may decrease the Benefit Rider Charge.

## 4.   LAPSE PROTECTION FUNDING LEVEL PROVISIONS

## 4.1  Lapse Protection Funding Level Test

On every Monthly Anniversary after the first Policy Anniversary, We perform a test to determine if a Lapse Protection Funding Level Charge will be assessed against the Lapse Protection Value. If Your Policy does not satisfy the Lapse Protection Funding Level Test on three consecutive Monthly Anniversaries, We will deduct a notional Lapse Protection Funding Level Charge from the Lapse Protection Value as part of the Lapse Protection Monthly Deduction, as described in Section 4.2.

The Lapse Protection Funding Level Test, as defined below, fails, if

(a) the Funding Level Adjusted Paid Premiums are less than the Accumulated Funding Level Required Premiums, defined below, and

(b) the Lapse Protection Value is less than the Lapse Protection Funding Level Charge Threshold, shown on the Coverage Description.

Funding Level Adjusted Paid Premiums are calculated each Monthly Anniversary starting with the first Monthly Anniversary after the Policy Issue Date. On the first Monthly Anniversary, the Funding Level Adjusted Paid Premiums are equal to the sum of all Lapse Protection Net Premiums received under Your Policy in the first Policy month less the amount of any Withdrawals or Policy Loans taken during the first Policy month . On each Monthly Anniversary thereafter, the Funding Level Adjusted Paid Premiums are equal to Funding Level Adjusted Paid Premiums from the prior Monthly Anniversary, increased by any Lapse Protection Net Premiums received under your Policy less the amount of any Withdrawals or Policy Loans taken since the prior Monthly Anniversary, and then multiplied by a factor equal to 0.9 on a Policy Anniversary, and 1.0 on any other Monthly Anniversary.

Accumulated Funding Level Required Premiums are calculated each Monthly Anniversary starting with the first Monthly Anniversary after the Policy Issue Date. On the first Monthly Anniversary, the Accumulated Funding Level Required Premiums are equal to the first year Funding Level Required Premium, shown on the Coverage Description. On each Monthly Anniversary thereafter, the Accumulated Funding Level Required Premiums are equal to the Accumulated Funding Level Required Premiums from the prior Monthly Anniversary, increased by the Funding Level Required Premium for the current Policy Year, and then multiplied by a factor that is equal to 0.9 on a Policy Anniversary, and 1.0 on any other Monthly Anniversary.

**4.2 Lapse Protection Funding Level Charge**

If Your Policy has not satisfied the Lapse Protection Funding Level Test on three consecutive Monthly Anniversaries, We will deduct a notional Lapse Protection Funding Level Charge from the Lapse Protection Value as part of the Lapse Protection Monthly Deduction. The Lapse Protection Funding Level Charge, on any Monthly Anniversary, is equal to the greater of (a) zero and (b) the excess of the Accumulated Funding Level Required Premiums over the Funding Level Adjusted Paid Premiums. We will continue assessing the charge until the Lapse Protection Funding Level Test is satisfied on a future Monthly Anniversary, at which point the Lapse Protection Funding Level Charge will stop being assessed until the Lapse Protection Funding Level Test is not satisfied again for three consecutive Monthly Anniversaries.

If an Accelerated Benefit Rider is attached to Your Policy and You have received an Accelerated Death Benefit payment, the Lapse Protection Funding Level Test provisions of this LPB Rider will no longer apply to Your Policy.

## 5.   EFFECTS OF POLICY VALUE CHANGES PROVISIONS

### 5.1  Policy Withdrawals and Policy Loans

A Policy Withdrawal or Policy Loan will reduce the Lapse Protection Value by the amount of the Policy Withdrawal or Policy Loan.

### 5.2  Decrease in Face Amount

If you request a decrease in Face Amount of Your Policy will reduce the Lapse Protection Value in proportion to the reduction in the Face Amount.

### 5.3  Increase in Face Amount

If you request an increase in the Face Amount of Your Policy, this LPB Rider will terminate on the date the Face Amount is increased. Your Policy will continue in force without the Lapse Protection Benefit.

## 6.   CHANGE IN NET CASH SURRENDER VALUE PROVISION

If the Net Cash Surrender Value under Your Policy becomes less than zero at any time while Your Policy is in force under the LPB Rider, no negative interest (i.e. an interest charge) will be assessed against Your Net Cash Surrender Value nor will the monthly cost of insurance be increased under Your Policy to reflect such negative Net Cash Surrender Value.

Symetra Life Insurance Company

*Jacqueline M. Veneziani*

Jacqueline M. Veneziani
Secretary



**Symetra Life Insurance Company**
Mail to: PO Box 34690 | Seattle, WA 98124-1690
Overnight to: 777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Phone 1-800-796-3872 | www.symetra.com

## ENDORSEMENT

This Endorsement is added to, and becomes a part of, the Rider to which it is attached. In case of conflict between the provisions of the Policy, Rider and this Endorsement, this Endorsement will control.

The following terminology clarification is provided:

> "Loan Amount" may also be referred to as "Loan Value";
> "Maturity Date" may also be referred to as "Expiry Date";
> "Monthly Anniversary Day" may also be referred to as "Monthly Anniversary";
> "Net Cash Surrender Value" may also be referred to as "Net Surrender Value";
> "Policy Value" may also be referred to as "Cash Value";
> "Policy Value" may also be referred to as "Accumulation Value"; and/or
> "Withdrawals" may also be referred to as "Partial Withdrawals"

This change is effective as of the Issue Date of the Policy.

Symetra Life Insurance Company

*Jacqueline M. Veneziani*

Jacqueline M. Veneziani
Secretary

Symetra® is a registered service mark of Symetra Life Insurance Company.



**Symetra Life Insurance Company**
Mail to: PO Box 34690 | Seattle, WA 98124-1690
Overnight to: 777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Phone 1-800-796-3872

# ENDORSEMENT

This Endorsement to the Accelerated Death Benefit Rider for Chronic Illness and Accelerated Death Benefit Rider for Chronic Illness Plus, if applicable, is added to, and becomes a part of, the Policy to which it is attached. In case of conflict between the provisions of the Policy, Rider and this Endorsement, this Endorsement will control.

The first bullet of the definition of **"Chronically Ill Person"** is replaced with the following:

- being unable to perform (without Substantial Assistance from another person) at least two Activities of Daily Living for a period of at least 90 days due to a loss of functional capacity; or

This change is effective as of the Issue Date of the Policy.

Symetra Life Insurance Company

*Jacqueline M. Veneziani*

Jacqueline M. Veneziani
Secretary



**Symetra Life Insurance Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Mail to New Business: PO Box 549291 | Waltham, MA 02454-9291
Fax: 1-877-435-5500

*POLICY ENDORSEMENT* ─────────────────────────────────────

This Endorsement is added to and becomes a part of the Policy to which it is attached. In the case of conflict between the provisions of the Policy and this Endorsement, the provisions of this Endorsement will control.

Your Policy has been changed as follows:

Any reference(s) to "2001 CSO" or "2001 Commissioners Standard Ordinary" are replaced with "2017 CSO" or "2017 Commissioners Standard Ordinary".

Symetra Life Insurance Company

*Jacqueline M. Veneziani*

Jacqueline M. Veneziani
Secretary

L-10226 7/18                                                    Symetra® is a registered service mark of Symetra Life Insurance Company.



**Symetra Life Insurance Company**
Home Office: 777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5191
Mail to New Business: PO Box 549291 | Waltham, MA 02454-9291
Fax: 1-877-435-5500

# INDIVIDUAL LIFE INSURANCE APPLICATION
## PART 1 – LUC – 246/FL

Page 1 of 7

## 1.  PROPOSED INSURED A INFORMATION

| (a) First Name | | (b) Middle Initial | (c) Last Name | | | |
|---|---|---|---|---|---|---|
| Ellen | | | Joseph | | | |

| (d) Residence Address (may not be a P.O. Box) | | | City | State | Zip |
|---|---|---|---|---|---|
| 3625 N. Country Club Drive #708 | | | Aventura | FL | 33180 |

| (e) Mailing Address (may be a P.O. Box) | (f) Phone Number |
|---|---|
| | 305-332-6603 |

| (g) Date of Birth | (h) State of Birth | (i) Gender | (j) Marital Status |
|---|---|---|---|
| 09/06/1944 | New York | ☐ Male  ☑ Female | Widow |

| (k) Height | (l) Weight | (m) US Social Security #/ US Tax ID | (n) Driver's License # and State of Issue |
|---|---|---|---|
| 5'2" | 140 | 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 | J210-200-44-826-0 FL |

(o) US Citizen  ☑ Yes  ☐ No   If not a citizen: Are you a Permanent Resident?  ☐ Yes  ☐ No
If No, Provide Country of Citizenship _____
Type of US Visa _____        Expiration Date _____

| (p) Occupation and Duties |
|---|
| Real Estate Broker |

| (q) Employer & Employer Address |
|---|
| Self-3625 N. Country Club Drive, Aventura, FL 33180 |

| (r) Earned Annual Income | (s) Unearned Annual Income | (t) Net Worth |
|---|---|---|
| 540000 | 465000 | 12,450,000 |

## 2.  PRODUCT & RIDER SELECTION

(a) Amount of Coverage: 6,500,000

(b) Universal Life Insurance: (please make selection below)

| Product Selection | Life Insurance Qualification Test (choose one) | Death Benefit Election (choose one) | Optional Riders |
|---|---|---|---|
| ☐ Symetra Accumulator IUL | ☐ Cash Value Accumulation Test (CVAT)<br>☐ Guideline Premium Test (GPT) | ☐ A: Face Amount<br>☐ B: Face Amount + Accumulation Fund<br>☐ C: Face Amount + Return of Premium | ☐ Chronic Illness Plus Rider (please complete CIPR supplemental app)<br>☐ Supplemental Protection Rider<br>☐ Surrender Value Enhancement Rider<br>☐ Charitable Giving Rider |
| ☐ Symetra Protector IUL w/Lapse Protection | ☐ Cash Value Accumulation Test (CVAT)<br>☐ Guideline Premium Test (GPT) | ☐ A: Face Amount<br>☐ B: Face Amount + Accumulation Fund<br>☐ C: Face Amount + Return of Premium | ☐ Charitable Giving Rider (please complete information section below)<br>☐ Chronic Illness Plus Rider (please complete CIPR supplemental app)<br>☐ Surrender Value Enhancement Rider |
| ☑ Symetra UL-G w/Lapse Protection | ☑ Cash Value Accumulation Test (CVAT)<br>☐ Guideline Premium Test (GPT) | ☑ A: Face Amount | ☐ Accidental Death Benefit $_____<br>☐ Chronic Illness Plus Rider (please complete CIPR supplemental app)<br>☐ Insured Children's Benefit (please complete the Part III ICB app)<br>☐ Return of Premium Rider<br>☐ Term Rider on Others (please complete Part I for each insured)<br>☐ Charitable Giving Rider |
| ☐ Symetra CAUL | ☐ Cash Value Accumulation Test (CVAT)<br>☐ Guideline Premium Test (GPT) | ☐ A: Face Amount<br>☐ B: Face Amount + Accumulation Fund<br>☐ C: Face Amount + Return of Premium | ☐ Accidental Death Benefit $_____<br>☐ Chronic Illness Plus Rider (please complete CIPR supplemental app)<br>☐ Insured Children's Benefit (please complete the Part III ICB app)<br>☐ Term Rider on Others (please complete Part I for each rider insured)<br>☐ Charitable Giving Rider |

(c) Term Life Insurance: (please make selection below)

| Product Section | Term Duration | | Optional Riders | |
|---|---|---|---|---|
| ☐ Symetra Term | ☐ 10 Years  ☐ 30 Years<br>☐ 15 Years<br>☐ 20 Years | ☐ Accidental Death Benefit $_____<br>☐ Insured Children's Benefit<br>(please complete the Part III ICB app) | ☐ Term Rider on Others<br>(please complete Part I for each rider insured)<br>☐ Waiver of Premium | |

LUC-246/FL 2/19

Ed. 2 6/2019

## 2. PRODUCT & RIDER SELECTION  *(continued)*

(d) Other:

(e) If you elected the Charitable Giving Rider Please Complete this Section:

Name of Charitable Giving Beneficiary: _____

Address: _____ 501(c) Tax ID Number: _____

Who will provide confirmation to the charitable organization? (choose one)

☐ I will notify the charity of my intent          ☐ Permit the Company to notify the charity of my intention upon my death

## 3. PROPOSED OWNER INFORMATION

(a) Relationship of Proposed Owner to Proposed Insured A?

☐ Proposed Insured A

☑ Trust *(Provide details in the section below and complete the Trustee Certification form)*

☐ Other *(Provide details in the section below and complete the Entity Certification, if appropriate)*

| (b) First Name | (c) Middle Initial | (d) Last Name |
|---|---|---|
| Ellen Joseph Irrevocable Trust | | |

| (e) Residence Address (may not be a P.O. Box) | City | State | Zip |
|---|---|---|---|
| 3625 N. Country Club Drive #708 | Aventura | FL | 33180 |

(f) Mailing Address (if different)

| (g) Date of Birth | (h) US Social Security/US Tax I.D. | (i) Relationship to Insured |
|---|---|---|
| 03/31/2020 | 85-6143622 | Trust |

(j) US Citizen ☑ Yes ☐ No

If not a citizen: Are you a Permanent Resident? ☐ Yes ☐ No   If No, Provide Country of Citizenship

Type of US Visa _____

Expiration Date_____

(k) Would you like to designate a Secondary Addressee to receive notice of lapse or termination of the policy for nonpayment of premium? ☐ Yes (provide details below) ☑ No

Name: _____   Address: _____

If you do not wish to add a secondary addressee now, you may give us a written notice of a secondary addressee anytime while the policy is in force.

## 4. PROPOSED OWNER(S) REPLACEMENT

| | Yes | No |
|---|---|---|
| (a) Does the Proposed Owner(s) have existing life insurance policies or annuity contracts with this or any other company on the life of Proposed Insured A? | ☐ | ☑ |
| (b) Is the policy applied for expected to replace or change any existing life insurance policy or annuity, or is any part of the premium to be paid by policy loan or cash value from insurance presently in force?  (If yes, complete state required replacement form.) | ☐ | ☑ |

## 5. BENEFICIARY INFORMATION

The percentage for each type of beneficiary must total 100% and represent whole percentages.  Do not indicate multiple beneficiaries as a group – e.g., "All Children of Proposed Insured."

| P = Primary C = Contingent | Name (first, middle initial, last) or Organization Name, Residence Address and Telephone Number | Date of Birth/Trust | SSN, TIN or 501(c) Tax ID Number | Relationship to Proposed Insureds | % |
|---|---|---|---|---|---|
| ☑ P | Ellen Joseph Irrevocable Trust | 03/31/2020 | 85-6143622 | trust | 100 |
| ☐ P ☐ C | | | | | |
| ☐ P ☐ C | | | | | |
| ☐ P ☐ C | | | | | |
| ☐ P ☐ C | | | | | |
| ☐ P ☐ C | | | | | |

LUC-246/FL 2/19

### 6. PROPOSED INSURED A IN FORCE COVERAGE

| (a) Does Proposed Insured A have any other existing life insurance policies in force or applied for with this or any other company? If yes, please list below. | | | | | Yes ☐ | No ☑ |
|---|---|---|---|---|---|---|
| **Company Name** | **Policy Type** | **Product Type** | **Face Amount** | **Issue Date (Month/Year)** | **Status** | **Select if Replacing and/or 1035 Exchange\*** |
| | ☐ Personal<br>☐ Business | ☐ UL<br>☐ VUL<br>☐ Term<br>☐ Group | | | ☐ In Force<br>☐ Applied For | ☐ Replacement<br>☐ 1035 exchange |
| | ☐ Personal<br>☐ Business | ☐ UL<br>☐ VUL<br>☐ Term<br>☐ Group | | | ☐ In Force<br>☐ Applied For | ☐ Replacement<br>☐ 1035 exchange |
| | ☐ Personal<br>☐ Business | ☐ UL<br>☐ VUL<br>☐ Term<br>☐ Group | | | ☐ In Force<br>☐ Applied For | ☐ Replacement<br>☐ 1035 exchange |
| (b) Total amount of applied for coverage to be placed with all companies including Symetra $ | | | | | | |

### 7. PROPOSED INSURED A PERSONAL HISTORY (For any "Yes" answers, please provide details in Remarks Section 9)

| (a) Has Proposed Insured A: | Yes | No |
|---|---|---|
| i) Had any Life or Disability Insurance application declined or rated? | ☐ | ☑ |
| ii) Had any driver's license suspended or revoked, plead guilty to or been convicted of driving while impaired, intoxicated or under the influence of any drug; or plead guilty to or been convicted of two or more moving violations within the past three years? | ☐ | ☑ |
| iii) Ever plead guilty to, or been convicted of, a felony or misdemeanor; or is any such charge pending? | ☐ | ☑ |
| iv) Declared personal or business bankruptcy in the past five years or does Proposed Insured A anticipate declaring bankruptcy within the next two years? | ☐ | ☑ |
| (b) Within the past two years, has Proposed Insured A engaged in, or is he or she currently engaging in, aviation activities as a pilot or crew, scuba diving, parachuting, hang gliding, mountain/rock/ice climbing or racing of any motorized vehicles? (If "Yes", also complete Aviation/Avocation questionnaire.) | ☐ | ☑ |
| (c) Has Proposed Insured A ever used any form of tobacco or nicotine based products? If yes, mark all that apply and complete the details below: | ☐ | ☑ |

| Type | Frequency | MO/YR Last Used | Type | Frequency | MO/YR Last Used |
|---|---|---|---|---|---|
| ☐ Cigarettes/E-Cigarettes | | | ☐ Nicotine Patches | | |
| ☐ Cigars | | | ☐ Nicotine Gum | | |
| ☐ Pipes | | | ☐ Snuff | | |
| ☐ Chewing Tobacco | | | ☐ Other (list): | | |

## 8. PAYMENT METHOD AND FREQUENCY

**(a)** Payment Method: ☐ Automatic EFT*   ☑ Check

Payment With Application: $ 0 _____ (only if qualified for Temporary Insurance – Refer to Section 11)

Subsequent Premiums: $ 240,552 ____

**(b)** Payment Frequency: ☐ Monthly (EFT only)   ☐ Quarterly   ☐ Semiannually   ☑ Annually

Complete for payments to be taken by EFT (either complete the section below OR the Symetra EFT Form:

**(c)** Draft the following Premiums:   ☐ Initial and Subsequent Premiums   ☐ Subsequent Premiums Only

**(d)** Account Details:   Name On Account: _____   Type of Account: ☐ Checking   ☐ Savings

Bank Name: _____   Routing #: _____   Account #: _____

**(e)** If the Premium Payor is someone other than Proposed Insured A or the Proposed Owner complete information below:

| First | MI | Last | | US Social Security/US Tax I.D. | Date of Birth |
|---|---|---|---|---|---|
| | | | ☐ Male<br>☐ Female | | |

| Residence Address (may not be a P.O. Box) | City | State | Zip |
|---|---|---|---|
| | | | |

Mailing Address (may be a P.O. Box)

Signature of Premium Payor (for Corporate signers, you must be authorized to sign on behalf of the Corporation)

▶ SIGNATURE

* By electing EFT you are authorizing Symetra to automatically deduct the premium from the listed checking or savings account by electronic funds transfer (EFT). The required premium amount may differ from the amount indicated above due to any changes that may occur prior to issue.

## 9. REMARKS

For any "Yes" answers or additional information (excluding any additional information regarding HIV/AIDs), please provide details here:

## 10. ILLUSTRATION CERTIFICATION AND ACKNOWLEDGEMENT (NOT APPLICABLE TO SYMETRA TERM LIFE INSURANCE):

If an illustration (defined as a presentation or depiction that includes non-guaranteed elements of a policy over a period of years), was presented during the sale process and matches the policy applied for, a copy of that illustration must be signed and submitted to Symetra with the application. Otherwise, please review the following section.

As Proposed Owner, I acknowledge that:

☐ An illustration was not presented to me or an illustration was presented to me, however, the policy applied for is different than as illustrated.

If the illustration or revised illustration was not received, I understand that an illustration matching the policy, as issued, will be provided for my signature no later than at the time the policy is delivered.

Computer screen illustration certifications are not permitted on this application certification acknowledgment section. If a computer screen was used, and no illustration was printed, please review Symetra.com for the applicable certification acknowledgement form. This form must be submitted at time of application. If not received the application will be considered not in good order.

## 11. TEMPORARY LIFE INSURANCE AGREEMENT

| Temporary Life Insurance Agreement (TIA) questions: For any Yes answers to questions (a) - (c) or if the face amount is greater than $1,000,000, do not collect premium. No TIA coverage will be in effect. | Yes | No |
|---|---|---|
| (a) Within the past 90 days, has Proposed Insured A been admitted to, or been advised by a member of the medical profession, to be admitted to a hospital? | ☐ | ☑ |
| (b) In the past two years, has Proposed Insured A been treated by a member of the medical profession for: heart disease, stroke, tumor, mass, cancer, alcohol or drugs? | ☐ | ☑ |
| (c) In the past two years, has Proposed Insured A been tested positive for exposure to the HIV infection or been diagnosed by a licensed member of the medical profession as having ARC (AIDS Related Complex) or AIDS (Acquired Immune Deficiency Syndrome) caused by the HIV infection or other sickness or condition derived from such infection? | ☐ | ☑ |

For all plans, except Symetra SUL-G, if Proposed Insured A is under age 75 and the face amount is $1,000,000 or less and the TIA questions above are answered NO, Proposed Insured A will be covered for up to $250,000 under the TIA if a check is collected for the initial payment and included at application submission or if "payment of the initial premium by EFT" is selected. For Symetra SUL-G plans, TIA is offered under the Additional Insured Application.

## 12. AGENT/PRODUCER SECTION (To be completed by Agent/Producer)

| AGENT CERTIFICATION | | |
|---|---|---|
| (a) Is the Proposed Owner(s): | Yes | No |
| (i) Planning to fund this Policy using Premium Financing? ( Available to IUL only) | ☐ | ☑ |
| (b) Does the Proposed Owner(s) intend to assign or sell, or has the Proposed Owner(s) been involved in any discussion about the possible sale or assignment of, the life insurance policy for which the application is being made? | ☐ | ☑ |
| (c) Has the Proposed Owner(s) ever sold a policy to a life settlement, viatical or other secondary market provider, or is the Proposed Owner(s) in process of selling a policy? | ☐ | ☑ |
| AGENT REPLACEMENT | | |
| (a) Does the Proposed Owner(s) have any existing life insurance policies or annuity contracts with this or any other company? | ☐ | ☑ |
| (b) To the best of your knowledge, is this insurance expected to replace or change any existing life insurance or annuity? | ☐ | ☑ |

## 13. AGENT ILLUSTRATION CERTIFICATION (NOT APPLICABLE TO SYMETRA TERM LIFE INSURANCE)

If an illustration (defined as a presentation or depiction that includes non-guaranteed elements of a policy over a period of years), was presented during the sale process and matches the policy applied for, a copy of that illustration must be signed and submitted to Symetra with the application. Otherwise, please review the following section.

As agent I acknowledge that :

☐ An illustration was not presented to the Proposed Owner or an illustration was presented to the Proposed Owner, however, the policy applied for is different than as illustrated.

Computer screen illustration certifications are not permitted on this application certification acknowledgment section. If a computer screen was used, and no illustration was printed, please review Symetra.com for the applicable certification acknowledgement form. This form must be submitted at time of application.  If not received the application will be considered not in good order.

LUC-246/FL 2/19

## AUTHORIZATION TO RELEASE PERSONAL INFORMATION

I hereby authorize and request any medical care provider, pharmacy, pharmacy benefits manager, individual employer, insurance company, reinsuring company, medical examiners, government unit, consumer reporting agency, or other person or organization, and MIB, Inc., to disclose any and all medical information, non-medical information, employment information, and insurance information they hold concerning me, to the employees, agents, or attorneys of Symetra Life Insurance Company. This disclosure Authorization will permit employees, agents or reinsurers of Symetra Life Insurance Company to view, copy, be furnished copies, share, or be given details of all such information described above including, but not limited to, mental and physical condition, evaluation, diagnoses, treatment, prognoses, prescription records, and/or toxicology results; specifically to include drug or alcohol use, mental illness, psychiatric treatment or diagnosis, testing and/or treatment of HIV (AIDS virus) and/or other sexually-transmitted diseases. Symetra Life Insurance Company obtains medical information only in connection with specific products or claims. Symetra Life Insurance Company will not use or share personally identifiable medical information for any purpose other than the underwriting or administration of your policy, claim or account. I understand that the information obtained pursuant to this Authorization will be used for the purpose of verifying, evaluating, negotiating, and other pertinent legal uses, with respect to my application for insurance, or claim under a policy of insurance. This Authorization will expire at the end of the contestability period of any insurance policy issued in reliance on the records obtained through this Authorization or twenty-four (24) months after the date of signing this Authorization. The time limit may be increased or decreased to assure that the time limit complies with applicable law in the state where the policy is delivered or issued for delivery. The individual signing this Authorization has the right to revoke Authorization in writing, except to the extent that action has been taken in reliance on the Authorization, or during a contestability period. A written statement revoking this Authorization delivered to Symetra Life Insurance Company at its usual business address will revoke this Authorization. Any copy of this Authorization shall have the same authority as the original. I also understand that I or my representative have a right to receive a copy of this Authorization upon request.

I authorize Symetra Life Insurance Company, or its reinsurers, to make a brief report of my personal health information to MIB.

I acknowledge this insurance policy was not a prerequisite to receiving credit, property or services from any bank and that the amount of insurance I am applying for may not meet my complete financial needs. I have received information both orally and in writing stating that this insurance product is not a deposit or other obligation of, or guaranteed by, any bank or an affiliate of a bank and that the insurance product is not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States, or an affiliate of a bank.

Fraud Warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

I (we) agree that all statements and answers recorded on this application are true and complete to the best of my/our knowledge and belief, and shall form a part of any policy issued. I have also read the Temporary Life Insurance Agreement. (Maximum Temporary Insurance Coverage is $250,000.)

Under penalties of perjury, I certify that the number shown on this form is my correct Social Security or Tax Identification Number, I am a U.S. citizen or other U.S. person, and I am not subject to backup withholding due to failure to report all interest or dividends.

☐ Check this box if you have received a notification from the IRS that you are subject to backup withholding.

☐ Check this box if you are claiming Non-U.S. status and submitting an appropriate withholding certificate (usually a signed IRS Form W-8 or IRS Form 8233) instead of agreeing to this certification.

**The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The section below must be completed in entirety to ensure your application can be processed.**

Signed this **03/31/2020** , at **Aventura** , State of **FL**

Date (mm/dd/yyyy) — City — State

| | |
|---|---|
| Ellen Joseph | Ellen Joseph Irrevocable Trust |
| Printed Name of Proposed Insured A | Printed Name of Proposed Owner* (if other than Proposed insured A) |
| Ⓧ *Ellen Joseph* | Ⓧ *[signature]* , Trustee |
| Signature Name of Proposed Insured A | Signature of Owner* (if other than Proposed Insured A) |
| John Black | 561-213-2614 |
| Printed Name of Writing/Authorized Primary Insurance Producer | Primary Insurance Producer Phone |
| | jgblack505@hotmail.com |
| Signature of Writing/Authorized Primary Insurance Producer | Primary Insurance Producer Email |
| Insurance Producer FL License Number | |

*If Proposed Owner is a corporation/partnership, a corporate officer/partner or a Trust or Trustee, other than Proposed Insured must sign including title.

LUC-248/FL 2/19

## NOTICE OF INSURANCE INFORMATION PRACTICES

**MIB, Inc. (Medical Information Bureau, MIB)** - Information regarding the Insured's (You/Your) insurability will be treated as confidential. Symetra Life or its reinsurers may, however, make a brief report thereon to MIB, a not-for-profit membership organization of insurance companies, which operates an information exchange on behalf of its Members. If you apply to another MIB Member company for life or health insurance coverage, or a claim for benefits is submitted to such a company, MIB, upon request, will supply such company with the information in its file. Upon receipt of a request from you, MIB will arrange disclosure of any information it may have in your file. If you question the accuracy of information in MIB's file, you may contact MIB and seek a correction in accordance with the procedures set forth in the Federal Fair Credit Reporting Act. Information for consumers about MIB may be obtained on its website at www.mib.com. The address of MIB's information office is 50 Braintree Hill Park, Suite 400, Braintree, MA 02184-8734. MIB may also be contacted at 1-866-692-6901 (TTY 1-866-346-3642). Symetra Life or its reinsurers may also release information in its file to other insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitted.

**Investigative Consumer Report** – As a part of our underwriting procedure, we may request an investigative consumer report from a consumer reporting agency. A consumer report confirms and supplements the information on your application about your employment, residence, finances, smoking habits, marital status, occupation, hazardous avocations and general health. This report may also include information concerning your general reputation, personal characteristics and mode of living except as may be related directly or indirectly to your sexual orientation, including drug and alcohol use, motor vehicle driving record and any criminal activity. This information may be obtained through personal interviews with you, your family, friends, neighbors and associates. If a report is required, you may request to be personally interviewed. If you wish to be personally interviewed, request this in the remarks section of this application and we will notify the consumer reporting agency.

The information contained in the report may be retained by the consumer reporting agency and later disclosed to other companies to the extent permitted by the Fair Credit Reporting Act. We hold investigative consumer reports in strict confidence, and we use them only to evaluate your application on a fair and equitable basis. You have a right to inspect and obtain a copy of this report from the consumer reporting agency. If this consumer report has an adverse effect on an individual's eligibility for insurance, we will notify you in writing, and identify the reporting agency. You, or your authorized representative, are entitled to a copy of the Notice of Insurance Information Practices.

**Disclosure to Others** – Personal information we obtain about you during the underwriting process is confidential, and we will not disclose it to other persons or organizations without your written authorization, except as required or permitted by law or to the extent necessary for the conduct of our business. Examples of situations where we may share information about you are as follows:

1. The agent may retain a copy of your application. If reinsurance is required, the reinsurance company will have access to our application file. We give the consumer reporting agency enough identity information about you so that it may initiate a consumer report investigation.
2. We may release information to another life insurance company to whom you have applied for life or health insurance, or to whom you have submitted a claim for benefits, if you have authorized that company to obtain such information, and if we receive a release from you authorizing us to release such information to that life insurance company.
3. As stated earlier, we may report information to MIB.
4. We may release information to persons or organizations conducting bona fide actuarial or scientific research studies, audits or evaluations, or to our affiliates who may wish to market products or services.

**Access and Correction** – In general, you have a right to learn the nature and substance of any personal information about you in our file, upon your written request. Whenever we make an adverse underwriting decision, we will notify you of the reasons for the decision and the source of the information on which we based our decision. Please refer to the section on MIB, Inc., for that organization's disclosure procedure. There are procedures by which you can obtain access to personal information about you appearing in our policy files, including information contained in investigative consumer reports. We have also established procedures by which you may request correction, amendment or deletion of any information in our files which you believe to be inaccurate or irrelevant. A description of these procedures will also be sent to you upon request. If you feel that any information we have is inaccurate or incomplete, please write to the Life New Business Department of Symetra Life, PO Box 549291, Waltham, MA 02454-9291. Your comments will be carefully considered and corrections made where justified.

## TEMPORARY LIFE INSURANCE AGREEMENT
### For All plans EXCEPT Symetra UL-G. The Temporary Life Insurance Agreement for Symetra UL-G plans is provided for in the Additional Insured Application.

**AMOUNT OF COVERAGE:** If the Temporary Life Insurance questions have been answered "no" and if money has been accepted as advance payment for life insurance and Proposed Insured A dies while this temporary insurance is in effect, we will pay the beneficiary an amount equal to the lesser of:

(a) the amount of all death benefits applied for with this application, including any accidental death benefits, if applicable; or

(b) a maximum amount under all Temporary Life Insurance Agreements with Symetra Life of $250,000.

**COVERAGE BEGINS:** Life insurance under this Agreement will begin on the date of this application, if the Temporary Life Insurance questions have been completed and answered "no" and money equal to the first full premium has been accepted as advance payment for life insurance.

**COVERAGE ENDS:** Life insurance under this Agreement will terminate on the earliest of:

(a) 90 days from the date of this Agreement; or

(b) the date that insurance takes effect under the policy applied for; or

(c) the date a policy, other than as applied for, is offered to the Proposed Owner; or

(d) the date the Company mails notice of termination of coverage and a return of the payment to the Proposed Owner.

**LIMITATIONS:**

(a) This Agreement does not provide benefits for disability.

(b) Fraud or material misrepresentation in the application or in the answers to the questions of this Agreement invalidate this Agreement and the Company's only liability is for refund of the payment made.

(c) If Proposed Insured A is less than 15 days old or more than 75 years old, the Company's liability under this Agreement is limited to a refund of the payment made.

(d) If Proposed Insured A commits suicide, the Company's liability under this Agreement is limited to a refund of the payment made.

(e) If the check or draft submitted as payment is not honored by the bank, there is no coverage under this Agreement.

No one is authorized to waive or modify the terms of this Agreement.

LUC-246/FL 2/19                                                                                                  Symetra® is a registered service mark of Symetra Life Insurance Company.



**Symetra Life Insurance Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Mailing Address: PO Box 84068 | Seattle, WA 98124-9918
Phone 1-800-796-3872 | TTY/TDD 1-800-833-6388

# FINANCIAL INFORMATION SUPPLEMENT TO PART 1 APPLICATION

Proposed Insured **Ellen Joseph**                                   Date of birth **09/06/1944**

## SECTION I - PERSONAL INSURANCE
### TO BE ANSWERED IF THE INSURANCE APPLIED FOR IS PERSONAL COVERAGE

**1. Net Worth**

| Assets: | | Liabilities: | |
|---|---|---|---|
| Cash/Other Liquid Assets | $ 250,000 | Mortgages | 0 |
| Personal Property | 1,900,000 Jewelry&Art | Other Liabilities | 0 |
| Real Estate | 300,000 | Total Liabilities: | 0 |
| Stocks/Bonds | 5,200,000 | | |
| Other (describe) | 2,800,000 IRA | | |
| ~~Total Assets:~~ Business Valuation | 2,000,000 Realty Brokr | Total Net Worth: | $12,450,000 |

Total Assets $12,450,000

**2. Please give your total income**

| | Last Year | Year Prior |
|---|---|---|
| Annual Salary | $ 540,000 | $ 490,000 |
| Investment Income, Dividends, etc. | 316,000 | 312,000 |
| Other Income (describe) | 120,000 IRA Distrib | 115,000 IRA Distrib |
| ~~TOTAL~~ | $ 29,000 SS | $ 28,000 SS |
| Total | $ 1,005,000 | $ 945,000 |

## SECTION II - BUSINESS INSURANCE
### TO BE ANSWERED IF THE INSURANCE APPLIED FOR IS BUSINESS COVERAGE:

1. Name of Company _____

2. Length of time in business   ☐ Corporation   ☐ Partnership   ☐ Sole Proprietorship

3. Is the business being reorganized or expanded?      ☐ Yes      ☐ No
   If yes, provide details.

4. Please attach a copy of your Company's latest audited financial statements (balance sheet and profit & loss). If not available, complete the following:

| a. CURRENT COMPANY BOOK VALUE | | b. COMPANY NET PROFIT - Past |
|---|---|---|
| Assets | $ _____ | Two Years (After taxes and bonuses) |
| Liabilities | _____ | 20____   $_____ |
| Net Worth | _____ | 20____   $_____ |
| Insured's % Ownership | _____ | This Year (Est.)   $_____ |

Symetra® is a registered service mark of Symetra Life Insurance Company.

c. List below Business Insurance on all other key persons or owners of this business:

| Name | Title | Amount Applied For | Amount In Force | Percent of Ownership |
|------|-------|--------------------|-----------------|----------------------|
|  |  | $ | $ | % |
|  |  | $ | $ | % |
|  |  | $ | $ | % |

If other stockholders, partners, or key persons are not being similarly insured, why not?

5. (Check at least one box and furnish details)

☐ **KEY PERSON**

a. What special skills, knowledge, or experience does the proposed insured possess which makes the insurance necessary?

b. What is his/her compensation from the business? $

c. If the business is a new venture or was recently reorganized, please describe the key person's business background.

☐ **STOCK REDEMPTION/BUY AND SELL**

a. Is there a written agreement in effect?   ☐ Yes   ☐ No (Attach signed copy)

b. Current value of the business? $

c. How was the value determined?

☐ **BUSINESS LOAN**

a. Lender

b. Amount of loan $ _____  Date of loan _____  Is lender requiring the insurance?   ☐ Yes   ☐ No

c. The repayment terms are

d. The purpose of the loan is

I represent that all the statements and answers to the above questions are complete and true, to the best of my knowledge and belief, and I agree that they shall form a part of my application for insurance.

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

Signed at _Boca Raton, FL._ this _20th_ day of _Feb_ _2020_.

_____   2/20/20
**Signature of Proposed Insured**                Date

_Florida Trust Pending_   2/20/20
**Signature of Applicant**                Date

_John G. Black_   2/20/20
**Witnessed by**                Date

LUC-220/FL 3/15                    Page 2 of 2

**SYMETRA**
RETIREMENT | BENEFITS | LIFE

**Symetra Life Insurance Company**
Home Office: 777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004-5135
Mail to New Business: PO Box 549291 | Waltham, MA 02454-9291
Fax: 1-877-435-5500

27 FEB '20 AM 11:08 WAL

# INDIVIDUAL LIFE INSURANCE APPLICATION
## PART II – LUC-205/FL

Page 1 of 3

## 1. PROPOSED INSURED INFORMATION

| (a) First Name | (b) Middle Initial | (c) Last Name |
|---|---|---|
| ELLEN | | Joseph |

| (d) Social Security #/Tax ID | (e) Date of Birth | (f) Gender |
|---|---|---|
| 069360231 | 09-06-1944 | ☐ Male  ☒ Female |

(g) Name and Address of your personal physician:

Doctor Name **Angel HARRIS**   Date Last Seen **2019**

Address **Aventura Blvd, Aventura, FL 33180**  Phone # **305-692-1080**
Street/PO Box     City     State   Zip

Date & reason last consulted **2019, annual check up - WNL**

What treatment was given and/or medication prescribed **none**

## 2. FAMILY HISTORY

| | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| (a) Father | | 69 | heart attack |
| (b) Mother | | 86 | lung cancer |
| (c) Siblings: #Living **none** #Deceased **1** | | 74 | bone cancer, heart attack |

| (d) To the best of your knowledge has any family member listed above been diagnosed with, or treated for, cancer, diabetes or coronary artery disease by a member of the medical profession? If "Yes," identify family member, disorder and age of onset in the DETAILS section. If there is a history of cancer, indicate the type of cancer. | Yes ☒ | No ☐ |
|---|---|---|

## 3. MEDICAL QUESTIONS

Give complete detail for all yes answers in the DETAILS section. Please identify the question number and include diagnosis, dates, duration, treatments and medications prescribed and names/addresses for all physicians and hospitals. If you need additional room please attach on a separate piece of paper.

| (a) Within the past 10 years, have you or been treated, or been advised to be treated, by a member of the medical profession for: | Yes | No |
|---|---|---|
| i) High blood pressure, irregular heartbeat, chest pain, heart murmur, heart attack, congestive heart failure, or any other disease or disorder of the heart or arteries? | ☐ | ☒ |
| ii) Diabetes, elevated blood sugar or glucose intolerance, thyroid, or other endocrine or glandular disorder? | ☐ | ☒ |
| iii) Seizures, dizziness, fainting, epilepsy, transient ischemic attack, stroke, paralysis, or other neurologic or brain disorder? | ☐ | ☒ |
| iv) Cancer, lymphoma, leukemia, melanoma, cyst or tumor of any kind, malignant or benign? | ☒ | ☐ |
| v) Anemia, bleeding or clotting disorder, or any other blood disorder? | ☐ | ☒ |
| vi) Asthma, shortness of breath, chronic obstructive pulmonary disease, emphysema, tuberculosis, sarcoidosis, or any other disorder of the respiratory system? | ☐ | ☒ |
| vii) Nervous, mental or emotional disorder, or received counseling for depression, anxiety, stress or any other emotional disorder? | ☒ | ☐ |
| viii) Memory loss, dementia, or Alzheimer's disease? | ☐ | ☒ |
| ix) Disease or disorder of the prostate, testicles, breasts, cervix, uterus, kidney or urinary bladder? | ☐ | ☒ |

Symetra® is a registered service mark of Symetra Life Insurance Company.

| | | ☐ | ☒ |
|---|---|---|---|
| x) | Muscular dystrophy, multiple sclerosis (MS), Parkinson's disease, tremors, or Lou Gehrig's disease (ALS)? | ☐ | ☒ |
| xi) | Ulcers, colitis, ulcerative colitis, Crohn's disease, hepatitis, or other disease of the liver, stomach, esophagus, intestines, gallbladder, or pancreas? | ☐ | ☒ |
| xii) | Arthritis, gout, or any bone, joint, or muscle disorder? | ☐ | ☒ |
| xiii) | Any other physical or mental disorder, not listed above? | ☐ | ☒ |

**(b) Within the past 5 years, have you had:**

| | | ☐ | ☒ |
|---|---|---|---|
| i) | Any surgery or admission to a health care facility for treatment or observation by a licensed member of the medical profession for any illness, disease, or accident? | ☐ | ☒ |
| ii) | Any additional testing by a licensed member of the medical profession such as EKG's, laboratory testing or x-rays whether as an inpatient or outpatient? | ☐ | ☒ |
| iii) | Any diagnosis, treatment or advice made or provided by a licensed member of the medical profession for physical disability or impairment? | ☐ | ☒ |

**(c) In the past two years, have you tested positive for exposure to the HIV infection or been diagnosed by a licensed member of the medical profession as having ARC (AIDS Related Complex) or AIDS (Acquired Immune Deficiency Syndrome) caused by the HIV infection or other sickness or condition derived from such infection?**  ☐  ☒

**(d) Within the past 10 years, have you:**

| | | ☐ | ☒ |
|---|---|---|---|
| i) | Used or tested positive for marijuana, cocaine or other non-prescribed stimulant, narcotic or depressant? | ☐ | ☒ |
| ii) | Been advised to limit or discontinue the use of alcohol or drugs, or been treated for drug or alcohol abuse by a licensed member of the medical profession? | ☐ | ☒ |

**(e) Within the last 24 months, have you:**

| | | ☐ | ☒ |
|---|---|---|---|
| i. | Received a recommendation from a medical professional for any consultation, testing, investigation or surgery that has not yet been completed? | ☐ | ☒ |
| ii. | Consulted, or been examined or treated by any physician, chiropractor, psychologist or other health care practitioner or by any hospital, clinic, or other health care facility not already disclosed on this application? (If it was for a "check up", annual physical, employment physical, etc., so state and give findings and results.) | ☐ | ☒ |

**(f) Have you ever used any form of tobacco or nicotine based products? If yes, mark all that apply and complete the details below.**  ☐  ☒

| Type | Frequency | MO/YR Last Used | Type | Frequency | MO/YR Last Used |
|---|---|---|---|---|---|
| ☐ Cigarettes | | | ☐ Nicotine Patches | | |
| ☐ Cigars | | | ☐ Nicotine Gum | | |
| ☐ Pipes | | | ☐ Snuff | | |
| ☐ Chewing Tobacco | | | ☐ Other (list): | | |

**(g) Do you consume alcoholic beverages? If yes, please include type of beverage, frequency and quantity in the DETAILS section.**  ☒  ☐

**(h) List all prescribed medications, over the counter medications, and herbal supplements you have taken within the past 60 days and the dosage of each in the DETAILS section.** Flouxetine 20mg × 1 - depression; Sumatriptan 100mg x

**DETAILS: For any additional details and "yes" answers to the questions in section 2 and 3 (excluding any additional information regarding HIV/AIDs), please provide details here:** 1×, primary migraine

#2) Father, died at 69 y.o. - heart attack
Mother, died at 86 y.o. - lung cancer
Brother, died at 74 y.o. - bone cancer, heart attack.

#2) 1-2 glasses of wine, social, last 02-2020

#3 iv) DR: Breast cancer, 2010 - full recovery in 2010
surgery - removed
DR: Michael Schwartz t: 305-692-1080
in Mout Sinai hospital in Aventura, FL.

LUC-205/FL 5/15

I represent that the statements and answers given in the application are true, complete, and correctly recorded to the best of my knowledge and belief and shall form a part of any policy issued. I agree that: (1) I will notify the Insurer if any statement or answer given in the application changes prior to policy delivery; and (2) except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to the Owner and the first modal premium is paid.

**Fraud Warning:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

Signed this ___02-18-2020___ , at ___Aventura, FL___ , State of ___FL___
                     Date                      City                            State

_____        _____
Signature of Proposed Insured              Signature of Examiner

27 FEB '20 AM 11:08 WAL

(# 3vii) Dx: Depression, 2010 to present
DR: LORI Grabois
t: 305-932-5500

(# h) Medications; Fluxetine 20mg x 1
                    Sumatriptan 100mg x 1
DR: see primary above

APPS Paramedical
10071 Pines Blvd., Suite B
Pembroke Pines, FL 33024

LUC-205/FL 5/15

Flexible Premium Adjustable Life Insurance
Death Benefit Payable on Death of the Insured
Adjustable Death Benefit
Nonparticipating

**SYMETRA LIFE INSURANCE COMPANY**
A STOCK COMPANY
**777 108th Avenue NE, Ste 1200 Bellevue, WA 98004**
**Administrative Office: PO Box 549291, Waltham, MA 02454-9291**
**1-800-796-3872; TTY/TDD 1-800-833-6388 (Deaf/HH)**
**www.symetra.com**

L-10124/FL 12/14